FIRST NATIONAL BANK OF MONETTE *v.* FIRST NATIONAL
BANK OF LEPANTO.

· Opinion delivered June 18, 1923.

1.  BANKS AND BANKING—REPRESENTATION BY AGENT.—Where there
    was a collusive agreement between the cashiers of two banks to
    lend each other money, and the cashier of plaintiff bank sent for
    collection a note to the cashier of defendant bank, knowing that
    in what the latter cashier did he would be acting for himself and
    not for defendant bank, the latter would not be liable for a.
    conversion of such note by its cashier.

2.  DAMAGES—CONVERSION OF NOTE.—In an action for the conver-
    sion of a note, the damages recoverable is *prima facie* the face
    value of the note, but the defendant may show any fact or cir-
    cumstance tending to invalidate it or reduce its value.

3.  BANKS AND BANKING—COLLECTIONS—LIABILITY.—A bank receiv-
    ing a note for collection should either account for or sur-
    render it.

4.  PLEADING—VARIANCE.—Where a complaint against a bank for
    conversion of a note alleged that defendant converted a note
    sent to it for collection which bore the names of defendant's
    cashier as principal and one M. as surety, plaintiff was entitled
    to recover upon proof of such conversion, though the evidence
    showed that the note was signed by one N. as surety, unless de-
    fendant could show that he was misled by the variance to
    his prejudice.

Appeal from Poinsett Circuit Court; *W. W. Bandy,*
Judge; reversed.

*Horace Sloan,* for appellant.

Appellant was entitled to recover for the conver-
sion of the note whatever its value was. 119 Ark. 334;
L. R. A. 1916-C, 544; 29 Ark. 365. The action of defend-
ant bank, as collecting agent, in taking in lieu of note
sent for collection note signed by Harkins and Nawlyn,
making it payable to itself, constituted a conversion.
153 Ill. 168, 39 N. E. 265; 44 Ill. 312; 8 Wall. (U. S.)
641, 19 L. ed. 422; Mechem on Agency, 954. The note
alleged to have been converted is in possession of de-
fendant bank or was lost by it. The measure of damages
recoverable for conversion of note is the value of the

note, the value *prima facie* being its face, but defendant may show any fact or circumstance tending to invalidate it or reduce the value. 34 Ark. 421; 6 Ann. Cas. 841, note. The court erred in giving instruction No. 2. 13 Enc. of Evidence, 645-6; 16 Ark. 303; C. & M. Digest, § 1234-6; 44 Ark. 486; 138 S. W. 931; 240 U. S. 284, 36 Sup. Ct. 308; 129 Ala. 192, 29 So. 800; 14 Me. 72; 15 N. J. L. 337, 19 Am. Dec. 691; 2 Hill (N. Y.) 250; 28 Fed. 521; 2 Str. 809; 67 N. C. 241. Note payable to person as cashier is deemed *prima facie* to be payable to the bank or corporation of which he is such officer. 1 Clark 8; Skyles on Agency 727; C. & M. Digest, § 7808; 17 Me. 360; 28 N. Y. 641, 86 Am. Dec. 273; 46 Mo. 17. The court erred in admission of certain testimony and in refusing to give instruction No. 3 requested by plaintiff. Court erred in not withdrawing case from the jury because of misconduct of one of the jurors. C. & M. Digest, §§ 1294, 1295. This is not as those cases where verdict disclosed after reached, but it was flagrant misconduct to tell how the jury stood divided. 56 Mich. 536, 23 N. W. 211; 126 N. W. 468; 2 Thompson on Trials, § 2617.

*John W. Scoby,* for appellee.

The circuit court should submit only such issues to the jury as are raised by the pleadings or evidence. 130 Ark. 165. Cannot present an issue for reversal here that not raised by appellant below. 151 Ark. 554. There is little use to discuss the liability for the conversion of the note and the measure of damages, since the jury has found there was no note converted. The rule for measure of damages is laid down in 26 R. C. L. 1150. No error committed in giving defendant's requested instruction No. 1. 3 R. C. L. 627, §§ 255, 629; 13 Am. St. Rep. 247; 2 L. R. A. (N. S.) 194; 154 Ark. 76; 14 L. R. A. (Ky.) 376. No misconduct of jury shown requiring withdrawal of case from it. *Williams* v. *Williams,* 112 Ark. 507; 2 Thompson Trials, § 2353. Plaintiff's requested instruc-

tion No. 1 was covered by No. 1 given by this court. 130 Ark. 435.

SMITH, J.  This is a suit on the part of the First National Bank of Monette against the First National Bank of Lepanto for the alleged unlawful conversion of a promissory note. The complaint alleged that the plaintiff bank was the owner of a negotiable promissory note, dated June 25, 1920, executed by J. H. Harkins as principal and L. D. Mullins as surety, to plaintiff as payee, for $2,000, and due in ninety days; that this note was sent by the plaintiff to defendant for collection, and was wrongfully converted by the defendant.

Ned Fraser was the cashier of the plaintiff bank, and his brother, Clinton Fraser, was the president thereof, and they both testified that the note described above was sent to the defendant bank by registered mail, along with two other notes, for collection. The other notes received proper attention, but no acknowledgment was made of the note sued on. There was considerable correspondence about this note, chiefly on the part of the plaintiff bank, and both the Frasers made trips to Lepanto to see about it.

It is practically conceded that Harkins received from the plaintiff bank a note for $2,000, dated June 25, 1920, due ninety days from date, which he had signed; but, whether expressly conceded or not, the testimony leaves no room for doubt on that subject, but there is a question of fact whether Harkins received the note for the defendant bank or in his individual capacity, and there is also a question as to who the surety was.

The testimony is undisputed that plaintiff bank had held Harkins' note for $2,000, with Mullins as surety thereon, and that this note was renewed, and Mullins was surety on it also. This second note was not paid, but was renewed, and the note sued on is the note which was given in renewal. The president and the cashier of the plaintiff bank testified that Mullins had signed this note —the one sued on.

Harkins was the cashier of the defendant bank, and, before the expiration of the year in which the note was executed, he was succeeded as cashier by Mullins. Harkins does not deny signing the note sued on, but he did not state who signed the note with him. Indeed, objections were sustained to questions which would have elicited that information, it being the theory of the court that plaintiff bank could recover only for the conversion of the note described in the complaint. Mullins admitted having signed two notes as surety for Harkins, but he testified that he had signed only two, and denied that he had signed the last renewal note. On the contrary, he testified that Harkins told him the note had not been renewed, but had been paid.

The correspondence and the other testimony make it plain that the plaintiff bank did not expect the note to be paid at the time it was sent to the defendant bank for collection, but did expect a renewal, and Harkins finally attempted a renewal of it. This he did by sending to the plaintiff bank a note for $2,000 signed by himself and Nawlyn, but this note was payable to the Bank of Lepanto, and not to the order of the Bank of Monette, and was returned by the latter bank on that account. Harkins explained that this was a mistake, but he never corrected it.

Nawlyn testified that the only note of Harkins which he ever signed was the one payable to the defendant bank, and he denied that he had ever signed a note payable to the plaintiff bank.

It was shown that any mail addressed to the defendant bank would, in the usual course of business, have passed through Harkins' hands, and he no doubt received the note in question. What he did with it is not explained.

The testimony developed the fact that the cashier of each of these banks was lending money to the other, and in about equal amounts; but they both testified that they had authority from their respective boards to do so. It is the theory of the defendant that the cashier of

the plaintiff bank knew Harkins was acting for himself, and not for the defendant bank, in this transaction, and an attempt was made, on his cross-examination, to develop the fact that the note was not sent to the defendant bank, but was sent to Harkins individually. An objection was made to this testimony, but we think it was proper. If there was, in fact, a collusive agreement between these cashiers to lend each other money, and the cashier of the plaintiff bank sent the note to Harkins knowing that in what Harkins did he would be acting for himself individually, and not for the bank, the defendant bank would not be liable for the conversion of the note by Harkins, even though he should admit its conversion, because, in a transaction of that kind, he would not be the bank's agent. *Little Red River Levee District No. 2 v. Garrett,* 154 Ark. 76.

The Frasers denied there was any such purpose or understanding; but the question of fact is for the jury, and we cannot say there was not sufficient testimony to carry that question to the jury.

This issue was submitted to the jury, and we would not reverse the judgment had the case gone to the jury on that theory alone; but the case was also submitted upon the theory that the plaintiff could recover in the event only that the jury found that the defendant bank had received the identical note sued on, that is, one signed by both Harkins and Mullins.

The plaintiff asked, but the court refused to give, the following instruction: "1. If you find from the evidence that the plaintiff bank sent to the defendant bank for collection a promissory note; that the defendant bank actually received said note; and that the defendant bank, after having either failed or neglected to collect said note, failed or refused, upon demand made by plaintiff, to return said note to plaintiff bank, the defendant bank is liable to the plaintiff bank for the conversion of said note, and you should return a verdict for the plaintiff."

It will be observed that this instruction did not deal with the amount of the recovery, which would, of course, be for the value of the note, whatever that was. *Hooten* v. *State,* 119 Ark. 334; *Norman* v. *Rogers,* 29 Ark. 365. *Prima facie,* the value of the note is its face, but the defendant is at liberty to show any fact or circumstance tending to invalidate it or reduce its value. *Ray* v. *Light,* 34 Ark. 421.

We think the instruction set out should have been given. If the defendant bank received for collection a note belonging to the plaintiff bank, it should account for it or surrender it. This is elementary law.

The court gave, over plaintiff's objection, an instruction numbered 2, reading as follows: ''2. Unless you find from the evidence that the plaintiff owned the note set out and described in the complaint, your verdict should be for the defendant.''

To this instruction six specific objections were made, the third, fourth and sixth being as follows:

''3rd. Whether Mullins was surety on the note or not, it does not go to the question of liability. The defendant bank had no right to convert the note to its own use, whether Mullins was surety or not, or whether some one else was surety. This instruction is equivalent to stating to the jury that, even though they find that a note was sent to the defendant bank for collection, and that defendant received the note and converted it, still defendant would not be liable unless Mullins was the surety thereon.

''4th. The court should instruct the jury that the indebtedness involved in this action is the principal indebtedness of John Harkins, that there is no question that both banks are referring to the same debt, as the defendant bank has produced purported prior notes covering the same debt on which Mullins was surety; that the matter of who was surety on the third renewal of this indebtedness, so far as a description of the debt is concerned, is not of the substance of the issue; that if

the defendant bank converted a note to plaintiff **on** which Harkins was principal, defendant is liable for **the** conversion, whether Mullins or some other person **was** surety on said renewal.

"6th. This instruction makes the entire description of the note sued on material. Thus, a difference in date or interest rate would, under this instruction, justify the jury in returning a verdict for the defendant, which would not be the law."

We think the instruction should not have been given, and that the objections set out were well taken. Sections 1234, 1235, and 1236, C. & M. Digest.

In the case of *Molen* v. *Orr,* 44 Ark. 486, Chief Justice COCKRILL, for the court, said: "That there was a variance between the proof and the allegations of the complaint there is no question; but the materiality of the variance is not to be determined, as at common law, by the incoherence of the two statements on their face. It must be shown by the party alleging the variance that he has been misled to his prejudice. (Mansf. Dig., § 5075; Newman on Pl. & Pr. 720 *et seq.;* Green, *Ib.* 467). There was no pretense of surprise or of being misled in this case. Indeed, the only fact in the proof that is not found in the pleadings is the dissolution of the copartnership, and the release by one copartner to the other of his interest in the matter in controversy. This evidence was admitted without objection, and we must take it that the parties deemed the variance immaterial, or that they treated the complaint as amended to admit such evidence. *Burke* v. *Snell,* 42 Ark. 57; Green, Pl. & Pr. § 468; *Manice* v. *Brady,* 15 Abb. Pr. (O. S.) 173; *Speer* v. *Bishop,* 24 Ohio St. 598. So long as the claim proved is within the 'general scope and meaning' of the pleadings the variance cannot amount to a failure of proof (Mansf. Dig., § 5077), and it is apparent from the record that no other claim than the one proved was within the meaning of either the complaint or answer."

If the bank received a note signed by Harkins and some one else, it should account for it. There was no attempt to show that the note was without value, and if the defendant bank converted the note, then it should pay the plaintiff bank its value, whatever that may be.

A question is raised about the alleged misconduct of the jury, but as this is a question which is not likely to occur on a trial anew, we do not discuss this assignment of error.

For the errors indicated the judgment is reversed, and the cause remanded for a new trial.