FIRST NATIONAL BANK OF LEPANTO *v.* FIRST NATIONAL
BANK OF MONETTE.

Opinion delivered June 7, 1926.

1. BANKS AND BANKING—CONVERSION OF NOTE—VARIANCE.—In an action by a bank against another bank for conversion of its cashier's personal note sent to it for collection, where defendant raised the issue of collusion between the cashiers of the two banks to defraud the banks, admission of correspondence relating to notes and showing the course of dealings between the two banks was not objectionable as changing the action from one for conversion to one on contract.

2. BANKS AND BANKING—LETTER AS EVIDENCE.—In an action by a
bank against another bank for conversion of a note sent for col-
lection, a letter of plaintiff's cashier to his brother asking him
to secure a renewal of the note in question then in possession of
defendant bank, *held* admissible, in view of the brother's testi-
mony that he exhibited the letter to defendant's cashier and that
the cashier acknowledged receipt of a copy of the letter.

3. TRIAL—INSTRUCTION—GENERAL OBJECTION.—In an action by a
bank against another bank for conversion of a note executed by
the latter's cashier and sent to the latter bank for collection, an
instruction as to the general scope of authority of a cashier was
not objectionable as not taking into consideration whether the
latter's cashier was acting for himself or for the bank, in the
absence of a specific objection.

Appeal from Poinsett Circuit Court; *G. E. Keck,*
Judge; affirmed.

*Scobey & Mosby,* for appellant.

*Horace Sloan,* for appellee.

SMITH, J.   This is the second appeal in this case, and
in the former opinion the facts out of which this litigation
arose were fully stated, and it is unnecessary therefore to
restate them.  *First Nat. Bk. of Monette* v. *First Nat.
Bk. of Lepanto,* 159 Ark. 517, 252 S. W. 594.

J. H. Harkins, the cashier of the Lepanto bank, had
borrowed $2,000 from the Monette bank, and the note had
been indorsed by L. D. Mullins, and a renewal note had
also been indorsed by Mullins.  This second note was not
paid, but was renewed, and the note here sued on is the
note which was given in renewal.  The last renewal note
was sent to the Lepanto bank for renewal or collection,
but was never renewed or returned, whereupon the
Monette bank sued the Lepanto bank for the conversion of
the note.  There was a verdict and judgment for the
Monette bank, and the Lepanto bank has appealed.

The defenses set up in the trial from which this
appeal comes were:  (1), that Mullins had not indorsed
the renewal note sued on, which was dated June 25, 1920.
It is conceded that a note indorsed by Mullins for $2,000
would be good and collectible, but it was insisted that
Mullins had not indorsed the note, that the last note

which he did indorse had been paid by the giving of a
new note indorsed by a man who had since become insol-
vent, and that Harkins too had become insolvent, so that
the note in suit was without value; (2), that the transac-
tion was a collusive arrangement whereby the cashiers
of each of the banks loaned money to the other; that the
notes were not handled by either cashier in the usual
and ordinary course of the banking business, and that
therefore the defendant bank is not responsible for the
loss of the note, the same having been received from the
plaintiff bank by Harkins, who was the cashier of the
defendant bank, in his personal capacity, and not as
cashier of the defendant bank.

Mullins testified that the last note which he indorsed
was payable to the Lepanto bank, and not to the Monette
bank, but the question whether Mullins had indorsed
the note alleged to have been converted is concluded by
the verdict of the jury, and it is not questioned that a
note so indorsed was worth its face value.

For the reversal of the judgment of the court below,
it is insisted that the court erred in admitting certain
incompetent evidence and in giving conflicting instruc-
tions.

It is asserted that the alleged incompetent testimony,
which was admitted over the objection and exception of
the Lepanto bank, changed the nature of the suit, which
was originally for the wrongful conversion of the note,
to a suit on a contract wherein the Lepanto bank had
agreed to pay the note. This testimony consisted of cer-
tain correspondence between the two banks signed by the
respective cashiers. In one of the letters from the
defendant bank the cashier of that institution had stated
that the defendant bank was overloaded with paper which
was good, but which the bank was unable to carry, and the
plaintiff bank was asked to take certain amounts of this
paper, and the letter containing this request guaranteed
the payment of the paper which the plaintiff bank was
asked to take. Other letters related to paper which was
being transmitted between the banks, and several of these

letters referred to paper owned by the defendant bank other than the Harkins note.

We think these letters were competent under the issues joined, and we do not think they tended to change the nature of the cause of action from a suit for a conversion to a suit on a contract, for the reason that one of the principal contentions was that the loan to Harkins was the result of a collusive agreement whereby each cashier loaned money to the other. It was competent for the plaintiff bank therefore to show that there was no collusion between the respective cashiers of the two banks. The purpose of the letters offered in evidence was to show that there was a regular course of dealing between the banks by which plaintiff bank had undertaken to accommodate some of defendant bank's customers, and that the Harkins note, indorsed by Mullins, was one of these notes, and that it was not therefore a collusive affair between the two cashiers for the purpose of defrauding their respective banks or of using the funds of the banks without authority.

According to the testimony offered in appellee's behalf, this arrangement was first an oral one, which had been discussed by the president and cashier of the plaintiff bank with the president and cashier of the defendant bank. These letters, which were admitted over appellant's objection, tended to show that, pursuant to this arrangement, appellee bank had been handling paper of the customers of the appellant bank, including two officers thereof, one a vice president and another a director, and the letters had some probative value to show that there was nothing wrong or collusive between the cashiers of the two banks, but that the loan to Harkins and the renewal thereof were made in due course of business. The verdict of the jury is conclusive of this issue.

Special objections were made to a letter written by Ned Fraser, the cashier of the Monette bank, to his brother, Leving Fraser, who resided in Lepanto, but was not connected with either bank, this letter being made "Exhibit M" to the testimony of Ned Fraser. This

letter inclosed three notes for which the Monette bank was
asking either payment or renewals, and also requested
Leving Fraser to secure renewals of five other notes
which were referred to as being then in the possession
of the Lepanto bank.   Among these last five notes was
one referred to as the Harkins-Mullins note for $2,000,
the note alleged to have been wrongfully converted.   It is
insisted that this letter was self-serving, and was highly
incompetent.

The letter made ''Exhibit M'' was dated October 18,
1920, and was offered in evidence under the following cir-
cumstances: Ned Fraser testified that he was unable to
get returns from the Lepanto bank on certain notes which
had been sent to that bank for payment or renewal, and
among these notes was the one in suit, so he wrote his
brother, Leving Fraser, to call at the Lepanto bank and
make inquiry about them.   The objection was made that
the letter would be the best evidence of any authority con-
ferred upon Leving Fraser, whereupon the letter was
produced and offered in evidence.   Objection was then
made to the admission of the letter upon the grounds,
(a), that the Lepanto bank never came in contact with
the letter, and (b), that the letter was a self-serving
declaration.

Leving Fraser testified that he received the letter,
and, in order to show his authority to act for the Mon-
ette bank, he exhibited the letter to Harkins, who was at
the cashier's window of the Lepanto bank and in charge
of the bank at the time, and he testified that Harkins
told him that he had received a copy of the letter; and
admitted that the bank then had the Harkins-Mullins
note.

We think there was no error in admitting this letter.
The testimony of Leving Fraser made it admissible, even
though it would appear to have been only a self-serving
declaration at the time Ned Fraser offered it in evidence.
Leving Fraser testified that he exhibited the letter to
Harkins to show his authority for inquiring about the

note, and Harkins admitted having received a copy of it from the Monette bank.

The court gave, over appellant's objection, an instruction numbered 11, reading as follows: "You are further instructed that it is within the general scope of employment of the cashier of a bank to receive and handle notes sent to that bank in due course of trade for collection, and you are told that it needs no special authority given by special or separate resolution of the board of directors of that bank to authorize him to handle said notes so sent for collection. Any note, sent in due course of business from one bank to another, or from individual to a bank, for the purpose of collection, would come under the general scope of authority of the cashier of the bank, and the cashier would have authority to handle that note as the agent of and for the bank."

There was testimony showing what the duties of a bank cashier were, and the objection is not made that the instruction does not correctly declare the law; the objection is that the instruction does not take into consideration the question whether Harkins was acting for himself or the bank of which he was cashier, and is therefore in conflict with other instructions which submitted the question of collusion between the two cashiers.

As has been said, it is not contended that the instruction does not correctly declare the law defining the duty and authority of a bank cashier. The instruction refers only to notes sent in the ordinary course of business from one bank to another, and it was the theory of appellee that the note in suit had been so remitted to appellant bank. The court gave, at appellee's request, three instructions dealing with the question of collusion between the two cashiers. In another instruction the court told the jury that no one instruction was to be taken as the whole law of the case, but that all the instructions were to be considered together. There was no specific objection that the instruction took no account of the question of collusion, and this should have been made if appellant conceived the instruction to be in conflict with the instruc-

·tions on that subject. *Alexander* v. *Williams-Echols Dry Goods Co.,* 161 Ark. 363, 256 S. W. 55.

We find no error in the record, so the judgment will be affirmed.