This is the second appeal in this case, and in the former opinion the facts out of which this litigation arose were fully stated, and it is unnecessary therefore to restate them. First Nat. Bk. of Monette v. First Nat. Bk. of Lepanto, 159 Ark. 517, 252 S.W. 594.
J. H. Harkins, the cashier of the Lepanto bank, had borrowed $2,000 from the Monette bank, and the note had been indorsed by L. D. Mullins, and a renewal note had also been indorsed by Mullins. This second note was not paid, but was renewed; and the note here sued on is the note which was given in renewal. The last renewal note was sent to the Lepanto bank for renewal or collection, but was never renewed or returned, whereupon the Monette bank sued the Lepanto bank for the conversion of the note. There was a verdict and judgment for the Monette bank, and the Lepanto bank has appealed.
The defenses set up in the trial from which this appeal comes were: (1), that Mullins had not indorsed the renewal note sued on, which was dated June 25, 1920. It is conceded that a note indorsed by Mullins for $2,000 would be good and collectible, but it was insisted that Mullins had not indorsed the note, that the last note *Page 381 
which he did indorse had been paid by the giving of a new note indorsed by a man who had since become insolvent and that Harkins too had become insolvent, so that the note in suit was without value; (2), that the transaction was a collusive arrangement whereby the cashiers of each of the banks loaned money to the other; that the notes were not handled by either cashier in the usual and ordinary course of the banking business, and that therefore the defendant bank is not responsible for the loss of the note, the same having been received from the plaintiff bank by Harkins, who was the cashier of the defendant bank, in his personal capacity, and not as cashier of the defendant bank.
Mullins testified that the last note which he indorsed was payable to the Lepanto bank, and not to the Monette bank, but the question whether Mullins had indorsed the note alleged to have been converted is concluded by the verdict of the jury, and it is not questioned that a note so indorsed was worth its face value.
For the reversal of the judgment of the court below, it is insisted that the court erred in admitting certain incompetent evidence and in giving conflicting instructions.
It is asserted that the alleged incompetent testimony, which was admitted over the objection and exception of the Lepanto bank, changed the nature of the suit, which was originally for the wrongful conversion of the note, to a suit on a contract wherein the Lepanto bank had agreed to pay the note. This testimony consisted of certain correspondence between the two banks signed by the respective cashiers. In one of the letters from the defendant bank the cashier of that institution had stated that the defendant bank was overloaded with paper which was good, but which the bank was unable to carry, and the plaintiff bank was asked to take certain amounts of this paper, and the letter containing this request guaranteed the payment of the paper which the plaintiff bank was asked to take. Other letters related to paper which was being transmitted between the banks, and several of these *Page 382 
letters referred to paper owned by the defendant bank other than the Harkins note.
We think these letters were competent under the issues joined, and we do not think they tended to change the nature of the cause of action from a suit for a conversion to a suit on a contract, for the reason that one of the principal contentions was that the loan to Harkins was the result of a collusive agreement whereby each cashier loaned money to the other. It was competent for the plaintiff bank therefore to show that there was no collusion between the respective cashiers of the two banks. The purpose of the letters offered in evidence was to show that there was a regular course of dealing between the banks by which plaintiff bank had undertaken to accommodate some of defendant bank's customers, and that the Harkins note, indorsed by Mullins, was one of these notes, and that it was not therefore a collusive affair between the two cashiers for the purpose of defrauding their respective banks or of using the funds of the banks without authority.
According to the testimony offered in appellee's behalf, this arrangement was first an oral one, which had been discussed by the president and cashier of the plaintiff bank with the president and cashier of the defendant bank. These letters, which were admitted over appellant's objection, tended to show that, pursuant to this arrangement, appellee bank had been handling paper of the customers of the appellant bank, including two officers thereof, one a vice president and another a director, and the letters had some probative value to show that there was nothing wrong or collusive between the cashiers of the two banks, but that the loan to Harkins and the renewal thereof were made in due course of business. The verdict of the jury is conclusive of this issue.
Special objections were made to a letter written by Ned Fraser, the cashier of the Monette bank, to his brother, Leving Fraser, who resided in Lepanto, but was not connected with either bank, this letter being made "Exhibit M" to the testimony of Ned Fraser. This *Page 383 
letter inclosed three notes for which the Monette bank was asking either payment or renewals, and also requested Leving Fraser to secure renewals of five other notes which were referred to as being then in the possession of the Lepanto bank. Among these last five notes was one referred to as the Harkins-Mullins note for $2,000, the note alleged to have been wrongfully converted. It is insisted that this letter was self-serving, and was highly incompetent.
The letter made "Exhibit M" was dated October 18, 1920, and was offered in evidence under the following circumstances: Ned Fraser testified that he was unable to get returns from the Lepanto bank on certain notes which had been sent to that bank for payment or renewal, and among these notes was the one in suit, so he wrote his brother, Leving Fraser, to call at the Lepanto bank and make inquiry about them. The objection was made that the letter would be the best evidence of any authority conferred upon Leving Fraser, whereupon the letter was produced and offered in evidence. Objection was then made to the admission of the letter upon the grounds, (a), that the Lepanto bank never came in contact with the letter, and (b), that the letter was a self-serving declaration.
Leving Fraser testified that he received the letter, and, in order to show his authority to act for the Monette bank, he exhibited the letter to Harkins, who was at the cashier's window of the Lepanto bank and in charge of the bank at the time, and he testified that Harkins told him that he had received a copy of the letter, and admitted that the bank then had the Harkins-Mullins note.
We think there was no error in admitting this letter. The testimony of Leving Fraser made it admissible, even though it would appear to have been only a self-serving declaration at the time Ned Fraser offered it in evidence. Leving Fraser testified that he exhibited the letter to Harkins to show his authority for inquiring about the *Page 384 
note, and Harkins admitted having received a copy of it from the Monette bank.
The court gave, over appellant's objection, an instruction numbered 11, reading as follows: "You are further instructed that it is within the general scope of employment of the cashier of a bank to receive and handle notes sent to that bank in due course of trade for collection, and you are told that it needs no special authority given by special or separate resolution of the board of directors of that bank to authorize him to handle said notes so sent for collection. Any note, sent in due course of business from one bank to another, or from individual to a bank, for the purpose of collection, would come under the general scope of authority of the cashier of the bank, and the cashier would have authority to handle that note as the agent of and for the bank."
There was testimony showing what the duties of a bank cashier were, and the objection is not made that the instruction does not correctly declare the law; the objection is that the instruction does not take into consideration the question whether Harkins was acting for himself or the bank of which he was cashier, and is therefore in conflict with other instructions which submitted the question of collusion between the two cashiers.
As has been said, it is not contended that the instruction does not correctly declare the law defining the duty and authority of a bank cashier. The instruction refers only to notes sent in the ordinary course of business from one bank to another, and it was the theory of appellee that the note in suit had been so remitted to appellant bank. The court gave, at appellee's request, three instructions dealing with the question of collusion between the two cashiers. In another instruction the court told the jury that no one instruction was to be taken as the whole law of the case, but that all the instructions were to be considered together. There was no specific objection that the instruction took no account of the question of collusion, and this should have been made if appellant conceived the instruction to be in conflict with the instructions *Page 385 
on that subject. Alexander v. Williams-Echols Dry Goods Co., 161 Ark. 363, 256 S.W. 55.
We find no error in the record, so the judgment will be affirmed.