GREER *v.* LEVEE DISTRICT NO. 3, CONWAY COUNTY.

Opinion delivered October 6, 1919.

1. IMPROVEMENT DISTRICTS—FUNDS BORROWED BY THE DISTRICT—ENDORSEMENT OF NOTE BY DIRECTORS—NEW NOTE BY DISTRICT.—Funds were needed by a levee district, and a loan was negotiated at a bank, and notes were signed by the directors of the district and other individuals, with the understanding, that the notes were to become the notes of the district, and to be paid out of its funds. Later notes were executed by the district, and the original notes surrendered to the makers. *Held,* under the evidence, that this did not release the original makers from their liability to the bank.

2. PRINCIPAL AND AGENT—INDIVIDUAL ACTS OF AGENT—PRESIDENT OF BANK—ACTS DONE IN INDIVIDUAL CAPACITY.—Under the facts set out above, one of the makers of the notes was the president of the creditor bank; *held,* in an action by the bank against the makers of the notes to collect the same, that the knowledge of the president of the bank, and his testimony as to the purpose of himself and his co-makers in borrowing money from the bank, is not chargeable to the bank, for in a transaction in which his interests conflict with those of the bank it will be held that he was not acting for or representing the bank, and his conduct can create no estoppel against the bank to enforce the payment of the notes.

3. LEVEES AND LEVEE DISTRICTS—BORROWING MONEY.—Levee District No. 3 of Conway County, *held,* to have complied with the terms of Act 83, Acts 1905, and have properly performed all requirements, rendering a loan from plaintiff bank a valid charge upon the district.

4. LEVEES AND LEVEE DISTRICTS—APPLICATION OF MONEY BORROWED.—When a levee district has complied with the terms of the stat-

ute in borrowing money from plaintiff's bank, in an action to re-
cover said money by the bank, the application of the funds by.
the district is immaterial; the bank not being called on to see
that the funds were properly expended.

Appeal from Conway Chancery Court; *Jordan Sel-
lers;* Chancellor; affirmed.

*Edward Gordon,* for appellants.

1.   C. C. Burrow is not liable on either of the notes,
as no presentment was ever made or demand for pay-
ment made before due date.   Kirby & Castle's Digest,
§ § 7011-12-14.

2.   Burrow signed the notes with the understanding
that he was not to be liable.   W. S. Wood also signed
them, and he did not so sign.   The notes were never
transferred to an innocent holder or purchaser for value
without notice.   48 Ark. 426; 103 Fed. 427; 120 N. W.
414.

The county court has no authority to abolish dis-
tricts.   Kirby & Castle's Digest, § § 5753-4-5; 102 Ark.
401; 103 *Id.* 298.   A special act is not repealed by a later
general act.   72 Ark. 125; 93 *Id.* 621.   See also 93 *Id.*
495; 79 *Id.* 234-5; 22 Neb. 618.   Levee District No. 3 and
J. H. Dowdle, C. H. Summerhill, C. C. Burrow, L. A. Car-
ter, W. L. Wood, Bob Sesson, Jim Sesson, Josie Green,
G. O. Vail, D. M. Hays and W. E. Harwell can not be
assessed to pay off the $6,000 created by J. J. Scroggin
for the purpose of repairing and rebuilding the levee
in District No. 5, as none of them own lands in No. 5 and
all their lands are in District No. 3, which is a separate
district.

*W. P. Strait,* for appellees.

1.   The county court had the power and properly
exercised it in making the orders dissolving District No.
5 and in extending the boundary lines of Levee District
No. 3.   The territory embraced was subject to overflow
from the lands adjoining, and without the levee the lands
would. be practically worthless.   Art.  7, § 28, Const.
1874; 79 Ark. 158; 111 *Id.* 150; 104 *Id.* 425.   See also 21

Ark. 40; 48 *Id.* 385; 59 *Id.* 536; 81 *Id.* 567; 83 *Id.* 54; *Ib.* 344; 97 *Id.* 322; 99 *Id.* 100.

2. The question of allowing improvement districts to go beyond their specified boundaries for carrying on improvements contemplated is well settled. 119 Ark. 166; 107 *Id.* 442.

3. As to the question of liability for the debts, see Kirby's Digest, § § 4942, 4943; Acts 1905, Act No. 83, p. 205, conferring the necessary special powers on District No. 3 to construct and repair its levees and borrow money by executing notes, etc. In the proceedings involved the directors and land owners complied with the general laws and every provision of the Special Act No. 83, Acts 1905, p. 205. A meeting of land owners was held and a proper resolution adopted which bound the district to pay the debts contracted and thus fixed the liability of the district and land owners. This liability is personal under the resolution adopted. 107 Ark. 239; 65 *Id.* 543; 45 *Id.* 313; 48 *Id.* 267; 49 *Id.* 412; 56 *Id.* 92; 63 *Id.* 373. In all respects the decree below is correct as to the liability of the individuals and the district and in fixing the lien on the property in the district according to the assessed benefits for this indebtedness due the First National Bank. The only error, if any, was in wrongfully excluding as part of District No. 3 the territory added which once constituted District No. 5, which can be corrected here by so modifying the decree below as to add this territory to District No. 3 and in all other respects the decree should be affirmed. Cases cited *supra.*

### STATEMENT OF FACTS.

Many years prior to the year 1916 Levee Districts Nos. 3 and 5 of Conway County were duly established under the general laws, chapter 100, Kirby's Digest. These districts were adjoining and the maintenance of the levee systems in each was essential to give protection from overflow to the lands in both. No. 3 was a much larger district. No. 5 was a very small district, and the annual tax for levee purposes in this district was not

sufficient to keep its levees in repair. Levees in both districts had been broken by extraordinary overflows.

For the purpose of better maintaining levee systems in both districts the officers and land owners of same conceived the idea of abolishing the smaller district (No. 5) and of extending the boundary of District No. 3 so as to include all of the territory formerly embraced in No. 5 and some additional lands. They petitioned the county court for orders to effectuate such purpose and these orders were granted. No change was made, after these proceedings, in the directors of District No. 3 or in the assessors of that district. C. C. Burrow was chairman of the Board of Directors of the Levee District No. 3 and J. J. Scroggins and H. S. B. Oliver were the other members.

After the above orders of the county court had been made, an engineer was employed to make a survey and estimate of the cost to rebuild and repair the levees, and he reported to the directors of the Levee District No. 3. The directors called a meeting of the land owners, and they authorized the directors to have the work done. It was ascertained that it would require about $6,000 to do the work. First the sum of $4,000 was borrowed from the First National Bank of Morrilton, as evidenced by a note of $2,000 dated May 27, 1916, and a note of $2,000 dated August 22, 1916. These notes were signed individually by Burrow, Oliver and Scroggins and also by James, Dowdle and Stallings, it being the understanding between the makers that the notes would afterwards become the notes of the levee district and would be paid from the proceeds of the levy of taxes on lands in the district.

The levee district, as such, afterwards incurred an indebtedness in the sum of $2,000.

J. J. Scroggins, president of the First National Bank of Morrilton and also one of the directors, testified that these matters had been submitted to the land owners, and upon the strength of their authority the directors borrowed the money, and it was used in repairing and recon-

structing the levees; that after everything was completed the people who were on the notes wanted the levee district to make a new note, and thereupon the levee district's note was executed and placed in the bank in lieu of those executed by the individuals but that the debt that the individuals owed on their note had not been paid.

Clifton Moose, cashier of the First National Bank, testified that the original notes signed by the individuals were turned over to them and two notes in the sum of $3,000 each were taken in lieu thereof; that at the time he surrendered these individual notes to these gentlemen who had borrowed the money, he understood the notes taken in lieu thereof were good notes and could be enforced against the district, that the parties who signed the notes for the district so stated; it was understood that the levee district's notes would bind the original makers the same as the first notes did. The witness said: "When we surrendered them it was not intended to release the individuals who signed the first notes, and this was so understood by the parties at the time." His testimony further shows that the individual notes were surrendered to the makers "with the understanding that they were still liable under the new notes as endorsers and makers;" that the sum of $1,655.03 had been paid on the indebtedness of the levee district.

This lawsuit grew out of an effort on the part of certain land owners in Levee District No. 3 to restrain the collector of Conway County from collecting taxes that had been levied on their lands for levee purposes and of an effort on the part of the First National Bank to obtain judgment against both the individuals who signed the original notes and also against Levee District No. 3. Several suits were filed in the chancery court, but the pleadings in all raised substantially the same issues and by consent of the parties they were consolidated and tried as one.

The land owners, seeking to enjoin the collection of the levee taxes, contend that the county court had no jurisdiction to make the orders abolishing District No. 5

and extending the boundaries of District No. 3; that no legal assessment of benefits was made by the assessors who were authorized to make it; that the money for which these taxes were levied was expended in building and repairing the levee in Levee District No. 5 for which the lands in District No. 3 were not liable; that for the above reasons the taxes assessed against, levied on their property, and attempted to be collected, were illegal and void. The issue also was raised as to the liability of those who signed the notes as individuals.

The trial court found that the county court was without jurisdiction to enter the orders dissolving Levee District No. 5 and also without power to enter the order to extend the boundaries of Levee District No. 3 so as to include the territory embraced in that order. The court further found that C. C. Burrow and others who signed the notes to the bank as individuals were liable therefor and also found that the indebtedness was incurred by the signers of those notes for the use and benefit of Levee District No. 3, which was used by the latter district in repairing a levee outside its original boundaries and was used by it to repair the levees which were within the limits of District No. 5; that the Levee District No. 3 was liable to the bank on the note executed by it through its directors.

The court thereupon entered a joint and several judgment in favor of the bank against C. C. Burrow and all of the other signers of the original notes and also against Levee District No. 3, and also entered a separate judgment against Levee District No. 3 for the balance due on the note executed by the district through its directors to the bank.

From the decree of the court an appeal was prayed and granted to various parties designated, and among them C. C. Burrow. But none of them, according to the statement of counsel who filed the brief in this court in his behalf, has appealed except C. C. Burrow.

WOOD, J., (after stating the facts). The decree of the chancery court is correct, and should be affirmed.

(1) The undisputed evidence shows that C. C. Burrow was one of the makers of the original notes to the bank in the sum of $4,000. True, the evidence also shows that it was understood among the makers of those notes at the time the same were executed that the money was being borrowed for the use and benefit of the levee district, that is for the purpose of building and repairing levees particularly in what constituted Levee District No. 5 before the county court entered the order abolishing such district, and they, the makers, contemplated among themselves that when Levee District No. 3 executed its note to cover the amount they should be released from individual liability. But the preponderance of the evidence does not warrant the conclusion that it was so understood by the officers of the bank but rather to the contrary.

J. J. Scroggins, who was president of the First National Bank and also a maker of the notes, testified that after the work was finished the levee district's notes were executed by its directors and were formerly placed in the bank in lieu of those that had been executed by the individuals, but he further says that the debt owed by the individuals on their notes had never been paid.

Moose, the cashier of the bank, who as such had in charge the making of the loan, states that the original notes of $2,000 each were the individual notes of the makers, that "the levee district was not in it." He states that the original notes were turned over to J. R. Stallings and Dowdle, two of the makers, with the understanding that the new notes made by the levee district were to take the place of those signed by the individuals. But later on he was asked this question, "If these new notes now are no good then do you still look to the individuals who gave the first notes and actually borrowed the money for the payment of this indebtedness?" and he answered, "Yes, sir; they agreed to that." He explained what he meant as follows: "I mean that Mr. Dowdle, James and Stallings told us at the time they would be just as liable under the new notes. We wanted it understood

that the levee district's notes would bind them just the same as the first notes did,'' and he further states that when he ''surrendered them that it was not intended to release the individuals who signed the first notes. This was so understood by the parties at the time.''

(2)   The knowledge of J. J. Scroggins, president of the bank, and his testimony as to the purpose of himself and co-makers in borrowing the money from the bank is not chargeable to the bank, for in that transaction where his interests conflicted with that of the bank it must be held that he was not acting for or representing the bank and his conduct could create no estoppel against the bank to enforce the payment of the notes. See *Bank of Hartford* v. *McDonald,* 107 Ark. 239; *City Electric R. R. Co.* v. *First National Bank,* 65 Ark. 543.

(3)   Under act 83 of the Acts of 1905 the Board of Directors of Levee District No. 3 are specially ''authorized to borrow money, to issue bonds, notes, and other evidences of indebtedness'' under certain restrictions which are set out in the second section of act 83 of the Acts of 1905, page 205. The proof shows that all of these restrictions were fully complied with by the directors before the notes in this case were executed. Such compliance on the part of the directors of Levee District No. 3 with the provisions of this act constituted the notes executed by them ''a charge and lien upon all of the lands of the district in proportion to the benefits *et cetera,''* which the owners and holders of the evidences of the indebtedness, or the board of directors, could enforce in a court of chancery for the use and benefit of such holders.

(4).   As between the bank and the levee district, the act of the board of directors in borrowing the money from the bank was authorized by the statute, *supra,* and rendered the district liable for its payment. The bank was not called upon to see that the funds were properly expended. This act of the board of directors was not *ultra vires.* It must be borne in mind that this is not a suit by land owners of Levee District No. 3 against the directors of such district for misuse or misappropriation

of funds, therefore the issue as to whether the funds borrowed by the directors from the bank were properly and legally expended, does not arise in this case.

We are not called upon as we view the issue to determine on this appeal whether or not the county court had jurisdiction to abolish Levee District No. 5 and to extend the boundaries of Levee District No. 3.

The decree is affirmed.