## LITTLE RED RIVER LEVEE DISTRICT No. 2 *v*. GARRETT.

### Opinion delivered May 29, 1922.

1. BANKS AND BANKING—KNOWLEDGE OF OFFICERS.—A bank with which bonds proposed to be issued by a levee district were deposited by the latter's directors, who were also officers of the bank, and in control of its affairs, is charged with knowledge of such officers' fraudulent conduct in attempting to sell the bonds to the bank without authority and for their own purposes, and was not an innocent purchaser of the bonds.

2. PRINCIPAL AND AGENT—NOTICE OF AGENT.—An agent's knowledge is ordinarily imputed to the principal unless the agent acts for himself or has a personal interest rendering it improbable that he will report his knowledge to his principal.

3. CORPORATION—NOTICE TO OFFICER.—The exception to the general rule of imputing an agent's knowledge to his principal of cases where the agent acts for himself or has a personal interest, does not apply where an officer of a corporation acts as its sole representative or agent in the transaction, or where he is the corporation without accountability to any superior.

4. LEVEES—NOTICE OF WANT OF AUTHORITY TO SELL BONDS.—A bank's acts in purchasing levee district bonds from its controlling officers, who were also directors of the district, and crediting the proceeds to their individual accounts, was sufficient to charge it with knowledge of their want of authority to sell for their own benefit, even if they were not its only representatives in the transaction.

5. BANKS AND BANKING—LIABILITY FOR DIVERSION OF LEVEE DISTRICT'S BONDS.—In a suit by a levee district against the receiver of a bank for an accounting, in the absence of proof that the proceeds of levee district bonds credited by the bank to the individual accounts of the controlling officers of the district, who were also controlling officers of the bank, were used for the benefit of the district, the bank is chargeable with the amount thereof.

6. BANKS AND BANKING—DIVERSION OF PROPERTY—BURDEN OF PROOF. —In a suit by a levee district to hold a bank liable for diverting proceeds of sale of its bonds, where plaintiff contended that the bank should be charged with the proceeds of an unauthorized sale by a district director, the plaintiff had the burden of showing by a preponderance of testimony that the bank received these funds, it not being sufficient to show that the director had been guilty of other misappropriations and that it was not improbable that he had placed such funds in the bank.

7. BANKS AND BANKING—LIABILITY FOR DIVERSION OF LEVEE DIS-
TRICT'S FUNDS.—In a suit by a levee district to hold a bank liable
for diverting the district's funds, in the absence of proof that a
levee district collector's canceled check, indorsed by the district,
for tax money deposited to his credit, was not paid or was wrong-
fully paid to some one not authorized by the district to receive
the money, the bank was not chargeable with the amount thereof.

Appeal from White Chancery Court; *John E. Mar-
tineau,* Chancellor; reversed in part.

*Culbert L. Pearce, John E. Miller* and *C. E. Yingling,*
for appellant.

That part of the decree awarding the fourth issue of
bonds to appellant is supported by the law and the evi-
dence. The burden was on appellee to show that the bank
purchased these bonds in good faith and paid value
therefor. 82 Conn. 333, 135 Am. St. Rep. 278; 149 Wis.
413, 136 N. W. 549. The bank had knowledge of the in-
firmities of the bonds, as the knowledge of Long and Er-
ganbright is imputable to the bank. 7 R. C. L. 658, sec.
659; 77 Ark. 172; 107 Ark. 250; 147 Mass. 268, 9 Am.
St. Rep. 698; 118 Ill. 625. Where a person as an officer
of a corporation deals with himself individually, the cor-
poration being represented by no one except the person
himself, the corporation will be chargeable with notice
of any knowledge possessed by the officer. 22 S. W. 1056;
90 Iowa 554; 121 Mass. 490; 64 Mo. App. 527; 4 S. D.
312; 60 Fed. 78; 97 Ga. 527; 112 Ga. 823; 72 N. Y. 286;
32 Hun. 105; 28 R. I. 41; 20 S. W. 1119; 12 Fed. 686, and
many other cases cited by appellant.

The district was not liable to the bank on the bonds
because they were stolen from the district by the bank
officials. 95 Me. 553, 55 L. R. A. 730.

The bank was liable for the misappropriation of the
proceeds of the sale of the third issue bonds, which went
to the individual credit of Erganbright, under the gen-
eral rule that if the bank has knowledge that a breach of
trust is being committed by the improper withdrawal of
funds, it incurs liability. Many of the cases above cited
are applicable, but in addition, see 3 R. C. L. p. 550, sec.

177; 136 Ark. 442; 135 Ark. 291; 69 Ark. 43; 18 Tex. 811; 129 Ga. 126; 82 Conn. 8; 211 Mass. 409; 1914-B Ann. Cas. 677; 1917-F, L. R. A. (N. S.) 300.

*Brundidge & Neelly,* for appellee.

The knowledge of Erganbright that Long had no authority to sell the bonds is not imputable to the bank. The rule that a corporation is not bound by the knowledge of its officers, where an officer is acting in his own interests, instead of that of the bank, is sustained by the weight of authority. The following cases are in point: 3 R. C. L. pgs. 478-9; 140 Ark. 67; *Id.* 367; 100 Fed. 705; 191 Fed. 657; 180 Fed. 687; 118 Fed. 800; 147 Mass. 268; 239 Fed. 704; 240 Fed. 114; 178 Fed. 57; 2 Pomeroy's Eq. Jur. (3d Ed.) par. 675; 190 Fed. 136; 6 A. & E. Ann. Cas. 675; 6 A. L. R. 237, and many others cited by appellee.

Fraud is not presumed, but must be proved, and the burden of proving the bonds were not sold is upon appellant.

McCULLOCH, C. J.   The First National Bank of Judsonia, domiciled at the town of Judsonia, in White County, continued to do business until June 3, 1920, when it was found to be insolvent, and its affairs were taken over by a receiver appointed by the National Comptroller of the Currency. C. M. Erganbright was the president of the bank, and C. F. Long was its cashier. They were the managing officers of the bank, and, according to the testimony in the present litigation, they exercised complete control over the affairs of the bank, without accounting to any other officers or board. Long resigned as cashier in December, 1919, on account of criticism from a bank examiner, but he continued in joint control with Erganbright over the affairs of the bank.

After the bank failed it was discovered that it had been wrecked by these two parties who controlled it. It was found that they were manipulating the affairs of the bank for their own purposes, and had robbed the bank to the extent of nearly $100,000. The books and accounts of

the bank were left in obscurity on account of the manipulation of the various accounts by Erganbright and Long to cover up their unlawful and fraudulent transactions.

Appellant, Little Red River Levee District No. 2 of White County, is an improvement district organized under the statutes of this State for the purpose of constructing and maintaining a levee along certain stretches of Little Red River. Erganbright and Long and T. J. Pryor were the three directors of the district, and the accounts of the levee district were carried with the bank controlled by the two directors, Erganbright and Long. These parties, it appears from the testimony, dominated the affairs of the levee district as they did those of the bank.

There were four separate bond issues by the levee district. The last issue of $20,000, and the proceeds of the sale of a portion of the third issue are involved in the present litigation.

The transactions which form the subject-matter of this controversy run back to June 30, 1917, and it is conceded that on that date the levee district owed the bank the sum of $10,610.60 on overdrafts. It is also undisputed that subsequent to that date the bank purchased from Erganbright and Long third-issue bonds of the levee district aggregating the sum of $35,000, face value, and that the proceeds thereof—$34,000—were credited to the personal account of Erganbright. It is claimed on the part of the district that $5,000 more of that issue of bonds was purchased in the same way, but there is a controversy on that point.

In August, 1919, it was determined by the directors of the levee district that another bond issue of $20,000 was necessary to make certain repairs on the levee, and the bonds, in denominations of $500 each, were actually printed and signed, but the board then determined not to use the bonds, but to postpone the needed repairs until a more propitious time. Erganbright and Long took the

bonds and placed them in the vaults of the bank for safe-keeping, and the bonds have remained there until the present moment, having passed into the hands of the receiver when he took charge.

It appears that on December 10, 1919, notwithstanding the fact that the bonds were not to be put into circulation, but were to be safely kept in the vault of the bank, Erganbright and Long credited $18,000 to the levee district as the market value of the bonds, and this entry was made on the books of the bank as a purchase of the bonds by the bank. The proof shows that this was done solely for the purpose of covering up fraudulent transactions of Erganbright and Long and to balance up their accounts as nearly as possible. The funds thus credited were used by Erganbright and Long for purposes, according to the testimony, other than for the use of the levee district. At any rate, according to the preponderance of the evidence, the funds were not expended for the benefit of the district.

This action was instituted by the levee district against the receiver of the bank to cancel the alleged sale and transfer of the bonds to the bank and to recover possession of the bonds, and also to have an accounting with the bank as to the funds of the district received by the bank subsequent to June 30, 1917.

In the complaint it is alleged that the fourth-issue bonds were fraudulently put into circulation by Erganbright and Long, without authority and for their own purposes, and that the bank received the same without consideration and with knowledge of the fraudulent purposes of said parties. It is also alleged in the complaint that the bank purchased $35,000 of the third-issue bonds and wrongfully placed the proceeds of the purchase to the credit of Erganbright, and that, after allowing credits due the bank, the latter was indebted to the levee district in the sum of $35,000.

The receiver answered denying the charge relied upon by appellant, and alleged that the bank purchased the

fourth-issue bonds for a valuable consideration and was an innocent purchaser thereof, and also alleged that the bank was not indebted to the levee district in any sum, but that the district was indebted to the bank in the sum of $19,367.03.

There was a trial of the issues before the chancery court, and there was a decree in favor of appellant for the cancellation of the sale of the fourth-issue bonds, but the court dismissed appellant's complaint as to the prayer for the recovery of the proceeds of the former bond issue, and also dismissed the cross-complaint of the receiver against appellant. A cross-appeal has been prosecuted by the receiver.

The facts alleged by appellant with respect to the fraudulent use of the fourth-issue bonds by Erganbright and Long are established by the overwhelming weight of the evidence.

It is undisputed that Erganbright and Long looted the bank and had been engaged in that nefarious enterprise for several years. They had also been controlling the affairs of the levee district and using its funds for their own purposes for several years. They both fled the country the night before the bank went into the hands of a receiver, and Long has never returned or been heard of since that date. Erganbright returned and was indicted in the United States District Court and is now serving a term in the Federal prison. He testified as a witness in this case, and made no attempt to explain or excuse his wrong-doings. He admitted that he and Long had no authority to use these bonds, and he denied having used them in any way, and claimed that they still remained in the vault of the bank merely for safe-keeping. The testimony shows, however, that the price of the bonds was credited to the levee district on December 10, 1919, and there was a deposit slip for the amount in Erganbright's own handwriting. It is shown also that he signed the report of the bank examiner to the Comptroller of the Currency specifying these bonds as part of the assets of the bank.

The testimony of Erganbright is, of course, unreliable, but it merely corroborates the testimony of other reliable witnesses, particularly Mr. Pryor, the other director, to the effect that there was no authority whatever for the circulation of the bonds. Erganbright and Long acted solely for the bank and also assumed to act solely for the levee district, and simply used these bonds for their own fraudulent and unlawful purposes.

Under these circumstances, we are of the opinion that the bank was not an innocent purchaser, and that the chancery court properly canceled the purported sale of the bonds and decreed their return to the levee district. While the proceeds were credited on the bank's books, under the direction of Erganbright and Long, to the levee district, those funds were not, according to the evidence, used for the benefit of the levee district, because there were no repairs made thereafter and no further expenditures of funds.

The bank and the receiver, as its representative, are in no situation to claim immunity from the charge of knowledge of Erganbright's and Long's fraudulent conduct in attempting to sell the bonds. A corporation must necessarily act through agents, and the universal rule is that knowledge of an agent is ordinarily to be imputed to the principal; but there is an exception to that rule, that such knowledge of the agent will not be imputed to the principal where the agent acts for himself or has a personal interest in the transaction, thus rendering it improbable that he will report his knowledge to his principal. *Bank of Hartford* v. *McDonald,* 107 Ark. 232. This exception to the general rule has been, in many intances, extended to cases where an officer of a corporation acts for another corporation. Under these circumstances, the officer is treated as having a personal interest in the transaction, and his knowledge is not to be imputed to the corporation which he serves.

This exception, however, to the rule does not extend to instances where an officer of a corporation acts as its

sole representative or agent in the transaction under review. The reason for the exception fails where the officer of the corporation is its sole representative, and especially where, as in the present case, the officer is the corporation itself, without accountability to any superior. It would be entirely beyond reason or justice to hold that a person acting as the agent of both parties could wrongfully transfer property of one of his principals to the other. The facts of the present case illustrate the injustice of such a rule, for Erganbright and Long, without any actual authority, have simply attempted to transfer the property of the levee district—$20,000 of the fourth-issue bonds—to the bank.

The facts do not present a case for the determination which of two innocent parties must suffer where one has made it possible for injury to be imposed, inasmuch as Erganbright and Long acted for both·of the parties in the transaction and merely took the property of one and appropriated it to the use of the other.

The authorities on the questions here involved are numerous, but are not altogether in harmony as to the circumstances under which knowledge of an agent of a corporation will be imputed to it, but the principle here announced has been recognized by this court in the case of *Skillern* v. *Arkansas Woolen Mills,* 77 Ark. 172. The following authorities are also found to sustain this view: 7 R. C. L. 658; Note to *Lilly* v. *Hamilton Bank* (U. S. Cir. Ct. Ap.) 29 L. R. A. (N. S.) 558; note to *First Natl. Bank* v. *Burns* (Ohio St.) 49 L. R. A. (N. S.) 764; *Loring* v. *Brodie,* 134 Mass. 453; *Atlantic Cotton Mills* v. *Indian Orchard Mills,* 147 Mass. 268; *Brobston* v. *Penniman,* 97 Ga. 527; *Anderson* v. *Kinley,* 90 Iowa 554.

Counsel for appellee rely upon the decision of this court in *Greer* v. *Levee District,* 140 Ark. 60, but in that case the officers dealing with the bank were not the sole representatives of their principals in the transaction. That, in other words, was a case where the exception to the rule against imputing knowledge of the agent to his principal was clearly applicable.

The decree is therefore correct as to the cancellation and return of the bonds, and same will be affirmed.

The other issues in the case merely come down to questions of fact, as there is little, if any, dispute as to the law applicable thereto.

The bank purchased third-issue bonds from Erganbright and Long and credited the proceeds to Erganbright's account. This, of itself, was sufficient to charge the bank, even if Erganbright and Long had not been its only representatives in the transaction, with knowledge of the want of authority on their part to sell the bonds for their own benefit. The authority to sell the bonds is not disputed, but to sell them for the personal benefit of the directors was quite another thing, and there was no apparent authority for Erganbright and Long to sell the bonds and appropriate the funds to their own use.

An audit of the books was made by an accountant for the district, and the receiver also made an audit. These accounts are necessarily voluminous, and, to some extent, difficult to fully comprehend. They start, however, with an undisputed balance due the bank by the district, as an overdraft, on June 30, 1917, and the undisputed fact that the bank purchased the bonds and paid the proceeds to Erganbright, for his own use, amounting to $34,000. This put the burden on the receiver to show that the proceeds of this sale were expended by Erganbright for the benefit of the district. We fail to find sufficient proof in the record to account for these funds as having been used for the benefit of the district, and therefore the bank should be charged with this amount.

It is further shown that the bank received to the credit of the district, after June 30, 1917, taxes collected from the property owners, aggregating the sum of $17,004.85, thus making an aggregate of $51,004.85 to be debited against the bank. Against this, the overdraft of $10,610.60 should be credited, and also the sum of $30,877.21, shown to have been expended for the use of the district.

After crediting to the bank the aggregate amount of $41,487.81, it leaves a balance of $9,517.04 chargeable against the bank.

It is contended on behalf of appellant that the bank should be charged the further sum of $4,307.50, the proceeds from the additional sale of $5,000 of the third-issue bonds. This batch of bonds was sold by Erganbright to Mr. Orthwein of St. Louis, for the sum of $4,307.50, but it is not shown by the proof that these bonds went into the hands of the bank. It devolved upon appellant to show by a preponderance of the testimony that the bank received these funds. Erganbright and Long were at the time guilty of all sorts of defalcations and misappropriation of funds, and it is easy to believe that they placed these funds in the bank, but in the absence of affirmative proof we cannot assume that they did so. So the chancellor was correct in refusing to allow that item.

There is also an item of $8,496 tax money received by S. T. Hughes, collector of the levee district, and which, it is claimed, was paid over to the bank. The only proof on this subject is that Mr. Hughes deposited his collections of taxes made by him in the bank to his own credit as collector, and that he drew a check on this fund in favor of the levee district. He exhibited with his testimony a canceled check showing the indorsement of the levee district, but it is nowhere shown in the proof who actually received these funds. The canceled check was evidently returned to Hughes by the bank—at least that is the inference, but he does not say so in his own testimony—but the check was properly indorsed, and in order to recover this sum it devolved upon appellant to show that this check was not, in fact, paid, or that it was wrongfully paid to Erganbright or some one else not authorized by the levee district to receive the money.

On this branch of the case the decree is reversed, and a decree will be renderd here in favor of appellant for the sum of $9,517.04, with costs of appeal.

It is so ordered.

McCULLOCH, C. J., (on rehearing).  A petition for rehearing has been presented by each party; appellants, on the ground that this court erred in not allowing, as a claim against the bank, the additional item of $4,307.50, net price of the bonds sold to Orthwein, and $8,496, tax money alleged to have been paid into the bank by Hughes, appellant's tax collector; and appellee, on the ground that an item of $4,893.03 included in the charges against the bank subsequent to June 30, 1917, is improper, for the reason that it is included in the balance, or overdraft, shown on that date, and that the evidence clearly shows that the overdraft of appellant on the date mentioned above was $12,636.73, instead of $10,610.60, the sum on which our former judgment was based.

We are convinced, on re-examination of the accounts and other evidence in the record, that our original conclusion with respect to the additional items contended for by appellant was correct, and appellant's petition for rehearing is therefore overruled.

We are equally convinced that we erred in charging appellee with the item of $4,893.03 for tax money received after June 30, 1917, and also in regard to the amount of the overdraft.  Counsel for appellee has clearly shown the errors in these respects, and there should be a correction of our former judgment.

Increasing the overdraft to $12,636.73, as appellee is entitled to, and eliminating the additional charge of $4,893.03 for tax money received, the judgment against appellee should be for $2,597.88, instead of $9,517.04, as rendered on the original hearing.

The rehearing asked for by appellee is therefore granted, and the reduction indicated above is ordered.