No. 27,772.

THE SWAN SAVINGS BANK, *Appellant,* v. S. C. SNYDER, *Appellee.*

(262 Pac. 547.)

SYLLABUS BY THE COURT.

1. AGENCY — *Creation of Relation — Principal Getting Additional Sureties for Note at Request of Bank Acts for Himself.* When one desires to borrow money from a bank, or to renew a note previously given for money borrowed, and is informed by the bank officials that the bank desires names other than his own on the note, the borrower is not the agent of the bank in attempting to get other persons to sign with him on the note, and any representations the borrower makes to other persons to induce them to sign the note with him are made on his own account, and for his own benefit, even though the bank officials have suggested the names of persons whose signatures would be satisfactory to the bank.

2. BILLS AND NOTES—*Accommodation Signers—Party Accommodated.* When a person borrows money from a bank and gives his note therefor, which he is unable to pay when the note is due, the borrower, and not the bank, is the party accommodated by the bank's extending the time for the payment and taking a new note therefor, with the same or additional security, as the term "accommodation party" is used in our negotiable instruments statute. (R. S. 52-306.)

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed January 7, 1928. Reversed.

*S. C. Bloss, Stewart S. Bloss, George T. McNeish,* all of Winfield, *J. H. Johnson* and *L. D. Teter,* both of Knoxville, Iowa, for the appellant.

*Charles W. Roberts, Lloyd S. Roberts,* both of Winfield, and *J. O. Watson,* of Indianola, Iowa, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action on a promissory note. The defense was that defendant signed the note for the accommodation of plaintiff. There was a trial to the jury which answered special questions and returned a verdict for defendant. Plaintiff has appealed, and contends that under the facts disclosed by the evidence, the defendant did not, as a matter of law, execute this note for the accommodation of plaintiff. This point was pressed by plaintiff by a demurrer to evidence and by appropriate motions at various stages of the trial.

Agency, 2 C. J. pp. 433 n. 53, 440 n. 12.   Bills and Notes, 8 C. J. pp. 253 n. 55, 254 n. 76.

The facts are substantially these: In 1920 Fred Reeves, a farmer residing in Marion county, Iowa, then in good financial circumstances, borrowed $5,000 of the Swan Savings Bank, of Swan, Iowa, to use in making a payment on the purchase price of another farm he was then buying. For this he gave plaintiff his note, dated March 1, 1920, due in one year. Sometime within the year he purchased stock in the plaintiff bank, was elected a member of the board of directors, and was made vice president and placed on the loan committee. Before this note became due plaintiff placed this note, and other notes owned by it, with the Commercial Savings Bank, of Des Moines, as collateral security for money it borrowed from that bank. When the note came due Fred Reeves could not pay it, and desired to renew it. There was then a general depression of values, especially of land, and Fred Reeves' financial ability was not as good as it was a year earlier. He was told by the president and cashier of the bank that the bank could not carry his note unless he would get additional signers on it, and they suggested his cousin, Riley R. Reeves, his mother, S. C. Snyder, and J. S. Viers, as persons whose signatures, together with his own, would be satisfactory. Fred Reeves at first objected and argued that the loan had been to him on his personal note and he thought it should be so renewed. But he was told that plaintiff bank was not in condition to carry the loan itself, that if it carried the loan it would have to rediscount it, or put it up as collateral, and that it could not do so without it was secured, and urged that he get additional signers. Fred Reeves then acquiesced in the requirement and procured the signatures of the persons whose names had been suggested with him on a new note dated March 1, 1921, due in one year, for the same amount as the old note, and payable to the plaintiff. This he took to the plaintiff bank, which sent it to the Commercial Savings Bank at Des Moines, as collateral, in lieu of the former Fred Reeves note, which was returned to plaintiff bank and by it delivered to Fred Reeves. When Fred Reeves went to his mother, S. C. Snyder, and asked her to sign the note with him, she at first refused; said she had other children, and that she should not obligate herself to this amount for him. He explained to her, saying: "There is no show for you to lose a cent. It ain't for me, it's for the bank." She then signed. No one else talked with her about signing the note, before she signed it.

When this note came due Fred Reeves could not pay it, and wanted more time and to give a new note for another year. General financial conditions and land values were then more depressed than they were the year before. He was then told that the plaintiff bank could not handle the new note at all, that he would have to make the new note to the Commercial Savings Bank, secured in the way that bank required, or get the money elsewhere. Fred Reeves then executed a note for $5,000, dated March 1, 1922, due in one year, and payable to the Commercial Savings Bank of Des Moines, and procured the signatures of Riley R. Reeves, S. C. Snyder and J. S. Viers as makers thereon. This note was sent to the Des Moines bank with the request for that bank to carry the loan, the proceeds to take up the prior note of the same makers to the Swan Savings Bank. Before this note was accepted by the Commercial Savings Bank, it sent a representative to Swan who investigated the financial condition of the signers thereon and told Fred Reeves the bank would like to have it further secured by a second mortgage on one of his farms. Reeves consented to this and gave the mortgage. The Des Moines bank then accepted the note, and the former note executed by Reeves and others to the Swan Savings Bank was returned to him. A few months later the holder of the first mortgage on the farm above mentioned made a settlement with Fred Reeves by which he conveyed the land to the mortgagee to prevent foreclosure, the first mortgagee paying to the Commercial Saving Bank $1,000 to be applied upon Reeves' note, and it released its second mortgage, leaving a balance on the note to the Commercial Savings Bank of $4,000. Later the Commercial Savings Bank of Des Moines sold this note and indorsed it, without recourse, to the Swan Savings Bank. Fred Reeves went through bankruptcy. The balance of the note was not paid when it was due, and the Swan Savings Bank filed this action in the district court of Cowley county and procured service on S. C. Snyder by attaching land owned by her in that county.

Under the facts above set forth plaintiff contends that the court below erred in submitting to the jury the question whether S. C. Snyder signed for the accommodation of Fred Reeves, or for the accommodation of the plaintiff bank, and contends that she must be held, as a matter of law, to have signed for the accommodation of Fred Reeves. This contention must be sustained. When S. C. Snyder

signed first with her son in March, 1921, she necessarily did so for his accommodation and not for the accommodation of the bank, as the term "accommodation" is used in our negotiable instruments law. (R. S. 52-306.) The bank would have been accommodated by Fred Reeves paying his note. Since he could not do that, the fact that a new note was taken at all by the bank was for Reeves' accommodation. (*Bank v. Pirotte,* 107 Kan. 573, 574, 193 Pac. 327.)

It is argued that in getting additional signatures on his renewal note Fred Reeves was acting for the bank, and was therefore to be regarded as the agent of the bank in the representations he made to Mrs. Snyder which induced her to sign it. This contention lacks merit. One who desires to borrow money at a bank, or to renew an indebtedness he has there, and who goes to another to get him to sign the note with him in order that he can get the bank to accept it, acts for himself and does not act for the bank. This matter is discussed in *Trust Co. v. Gill,* 113 Kan. 261, 267, 214 Pac. 413, where it was said:

"Even though the creditor prepared the necessary papers and named the persons or property which he would be willing to accept for security, the act of the debtor in obtaining the security is one for his own benefit, and the debtor is not the agent of the creditor in so doing." (Citing a number of authorities.)

It is said that Mrs. Snyder received no consideration for signing the note. That is frequently true where one signs as surety for another, but that is a question that goes to the relation of the parties as between themselves. It has no effect so far as the payee of the note is concerned. Under our negotiable instruments act all persons who sign a note as makers are primarily liable thereon. (R. S. 52-103.) The question of who is principal and who is surety as between them is of no consequence to the payee. The negotiable instruments law does not use the word "surety" in this connection. It must be held, then, as a matter of law, that Mrs. Snyder, when she signed as maker with her son and others the note dated March 1, 1921, became primarily liable to the payee therein named for the amount of the note. That liability was not lessened by what was done in March, 1922, or subsequently.

Defendants cite and rely upon *National Bank v. Williams,* 117 Kan. 501, 232 Pac. 252. That case arose on the pleadings, where an entirely different set of facts was alleged from that shown by the evidence here. It was there alleged that the bank had a financial

interest in establishing and conducting the business for which the note in question was given, and for that reason had advanced the money to establish and conduct the business, and, for its own purposes, had the person conducting the business make a note to the bank for the amount, and that some time after the note had been given the officers of the bank then holding the note, which, if the allegations of the petition were true, represented in part its own indebtedness, requested Mrs. Williams to sign the note as an accommodation to the bank in order that it might use the note to its advantage. The allegations concerning the interests of the bank in the business being conducted, and the purpose for which the note was made, the time when Mrs. Williams was requested to sign, the fact that the officials of the bank, not the makers of the note, made the request, and the nature of the request and the explanation of why it was wanted, all were considered by this court when it held that the bank was not entitled to a judgment against Mrs. Williams on the pleadings. The real test of whom a party accommodates when he signs a note must be determined from the actual facts as they exist. In the Williams case, if the allegations of the answer were true, the bank actually was accommodated because of its financial interest in the business for which the note was given. In this case the bank had no financial interest in the matter for which the note was given. It had paid out to Fred Reeves $5,000 in money for the original note, and it was no accommodation to the bank to have that note renewed.

Not much else need be said. There is no evidence to support a finding that plaintiff signed for the accommodation of the bank; the question should not have been submitted to the jury. The judgment of the court below is reversed with directions to enter judgment for plaintiff.