No. 46,587

FIRST NATIONAL BANK OF DENVER, A Banking Corporation, *Appellee*, v. CARO CONSTRUCTION CO., INC., and NICHOLAS CARO (Not Appealing), and BETTY T. CARO, *Appellant*.

(508 P. 2d 516)

Opinion filed April 7, 1973.

*Daniel C. Bachmann,* of Wichita, argued the cause, and was on the brief for the appellant.

*Roger Sherwood,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause, and *Robert H. Nelson,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from a money judgment in favor of plaintiff First National Bank of Denver against defendant Betty T. Caro, based on her execution of a personal guaranty agreement. The Caro Construction Co., Inc., and Nicholas Caro, former husband of Betty T. Caro, also defendants, were judgment debtors in the same amount, but neither appealed.

The principal issue on appeal is whether Nicholas Caro was the agent of the bank to the extent that the bank was charged with misrepresentation made by him to Betty T. Caro in procuring her signature to a letter dated March 25, 1969.

In the fall of 1968, defendant Caro Construction Co., Inc., was

awarded a contract to build a post office building in Golden, Colorado, and lease it to the post office department. Defendant Nicholas Caro was president and sole stockholder of Caro Construction Co., Inc. In November of 1968 he was divorced from Betty and she was awarded fifty percent of the stock in the corporation. She had been secretary of the corporation prior to their divorce and remained so during the subject transactions.

Nicholas contacted plaintiff First National Bank of Denver in November of 1968 to obtain financing for the corporation to construct the post office building. The bank approved the loan and issued its letter of approval on December 6, 1968. The letter contained several conditions, including a requirement that the loan be executed by the corporation, and by Nicholas Caro and Betty T. Caro individually. The letter set the interest rate at seven and one-half percent and required construction to commence no later than February 1, 1969.

On February 20, 1969, the bank sent to Wichita for execution a promissory note in the amount of $475,000, a personal guaranty for Nicholas Caro and Betty T. Caro, and a construction loan agreement. The note was executed by the corporation; the guaranty was executed by Nicholas Caro and Betty T. Caro; and the loan agreement was executed by the corporation and the bank. These documents were returned to the bank after execution and each bore the date of March 5, 1969.

At about the time the documents were executed, it came to the attention of the bank loan officers that Nicholas and Betty Caro had recently been divorced. The loan officers decided to make certain Betty realized she had signed a guaranty of a corporation obligation and that there had not been any overreaching in obtaining her signature. On March 11, 1969, the bank sent the executed note, guaranty, and loan agreement to Betty and requested she review these with her attorney. Her attorney reviewed the documents and advised her it was not necessary that she sign the personal guaranty and that she should not have signed it. She understood that if the corporation failed to pay the note she would be required to do so. The documents were again returned to the bank on March 18, 1969, together with a letter from Betty's attorney to the effect that he had reviewed the documents with her and that she understood the extent of her liability.

The bank's commitment letter of December 6, 1968, required

that construction commence no later than February 1, 1969. The construction loan agreement that was eventually prepared and executed on March 5, 1969, required that construction commence within thirty days from the date the agreement was executed. By March 25, 1969, the bank loan officers became concerned that construction had not commenced. On that date the bank sent a letter to the corporation pointing out that since construction had not commenced on February 1, 1969, as had been required in the commitment letter of December 6, 1968, their commitment was null and void. The bank stated it would honor its commitment if the Caros would agree the interest rate be increased from seven and one-half percent to eight and one-fourth percent. The interest increase was approved by the corporation and by Nicholas Caro and Betty T. Caro individually by executing, "Accepted this 31st day of March 1969," on a copy of the letter and returning it to the bank.

After the letter of March 25, 1969, had been approved by the corporation and the two guarantors, the corporation proceeded with construction. The corporation requested and obtained from the bank $201,617.70 for construction costs.

In September of 1969 the partially constructed building collapsed. Neither of the defendant-guarantors attempted to refute or withdraw their guaranty until after the funds had been loaned to the corporation, the building had collapsed, and this suit had been filed.

At the conclusion of the trial the court announced its findings and entered judgment for the bank against all defendants for the principal amount of the note and the accrued interest. The bank announced it would waive the interest increase that had been agreed to in the letter of March 25, 1969.

Defendant Betty T. Caro first contends the trial court erred in holding that Nicholas Caro was not the agent of the bank in obtaining her signature on the bank's letter of March 25, 1969. Her argument is based on that part of the letter of March 25, 1969, which stated:

". . . Will you please acknowledge your acceptance of this modification by signing the appended copy of this letter as President of Caro Construction Company and as an individual, and having your ex-wife execute the appended copy as an individual."

Betty points out that if Nicholas was an agent of the bank in procuring her signature the bank is charged with his misrepresentation to her. The misrepresentation consisted of statements by

Nicholas to Betty that she was already bound by the March 5, 1969, guaranty and she had no choice in signing the March 25 letter. Betty claims she did have a choice, if she had known the full contents of the letter. She could have relied upon the statement of the March 25 letter that her guaranty of March 5 was null and void, and avoided her personal liability.

There is ample authority that under similar factual circumstances there is no agency between a bank and borrower. In *Trust Co. v. Gill*, 113 Kan. 261, 214 Pac. 413, it was stated:

". . . The situation is the same as though a creditor required specific security on making or renewing a loan and advised the debtor what security would be satisfactory to him. In such a case, even though the creditor prepared the necessary papers and named the persons or property which he would be willing to accept for security, the act of the debtor in obtaining the security is one for his own benefit, and the debtor is not the agent of the creditor in so doing." (p. 267.)

To the same effect is *Swan Savings Bank v. Snyder*, 124 Kan. 827, 262 Pac. 547:

"It is argued that in getting additional signatures on his renewal note Fred Reeves was acting for the bank, and was therefore to be regarded as the agent of the bank in the representations he made to Mrs. Snyder which induced her to sign it. This contention lacks merit. One who desires to borrow money at a bank, or to renew an indebtedness he has there, and who goes to another to get him to sign the note with him in order that he can get the bank to accept it, acts for himself and does not act for the bank. . . ." (p. 830.)

The test in determining the existence of agency so the doctrine of respondeat superior is applicable, is the right to control the servant. (*Hendrix v. Phillips Petroleum Co.*, 203 Kan. 140, 453 P. 2d 486.)

The bank had no control over Nicholas in procuring the signature of Betty, nor did the bank attempt to exercise any control. The bank merely required the signature of Betty and stated to Nicholas that if he wished to obtain the loan he would have to obtain her signature. The burden of proof was on Betty to establish by competent evidence the relationship of principal and agent. What constitutes agency and whether there is any competent evidence reasonably tending to prove its existence is a question of law. (*Greep v. Bruns*, 160 Kan. 48, 159 P. 2d 803.) We conclude as a matter of law no agency existed between the bank and Nicholas Caro.

Defendant Betty T. Caro further contends the trial court erred in holding the bank's letter of March 25 did not vitiate and render void the guaranty executed by her on March 5. The letter stated:

". . . As bonafide construction of improvements was not started by February 1, 1969, our commitment on that date became null and void."

This statement caused an extensive colloquy between court and counsel. The learned trial judge took the position that since the basis for declaring the guaranty of March 5 null and void was an erroneous recital as to the final date for commencing work, the March 5 commitment to make the loan was binding on the bank. We agree with the trial court that in an action against the bank by the defendants to enforce the obligation to advance funds under the March 5 agreement the defendants should prevail. Betty argues the bank cannot maintain an action on an agreement it has declared to be null and void. We would agree with her argument if she had relied on their statement and changed position to her detriment, but she did the opposite and complied with the bank's conditions to make the loan commitment of March 5 effective. Furthermore, she made no protest as to liability and remained passive while the bank advanced substantial funds based on her guaranty. Under these circumstances she cannot avoid liability.

Defendant Betty T. Caro's last contention is that the findings of fact and conclusions of law expressed by the trial court are contrary to the judgment of the court. She quotes several statements of plaintiff's counsel and several statements made by the court relating to the March 25 letter. In substance, these statements declared it was unnecessary for Betty or Nicholas to sign the March 25 letter in order to place a legal obligation on the bank to advance funds based on the papers executed on March 5. We are unable to see how a statement of the court to this effect is contrary to the judgment. The problem in this case is Betty wanted to take advantage of the "null and void" statement by the bank even though she had no knowledge of it until this litigation was commenced. This we cannot sanction, absent an agency relationship between the bank and Nicholas. Since we find no agency existed, the trial court did not err in entering judgment against Betty T. Caro.

Judgment is affirmed.