FIRST COMMERCIAL BANK, N.A. *v.* McGAUGHEY
BROTHERS, INC. and J.C. McGaughey

CA 88-273                                      785 S.W.2d 236

Court of Appeals of Arkansas
En Banc
Opinion delivered February 28, 1990

*Friday, Eldredge & Clark*, by: *Michael G. Thompson* and *Guy A. Wade*, for appellant.

*James A. McLarty*, for appellees.

JOHN E. JENNINGS, Judge. Appellant, First Commercial Bank, brought suit against McGaughey Brothers, Inc., and, in the alternative, J.C. McGaughey, individually, on an instrument of guaranty, seeking judgment for $160,000.00. The guaranty agreement was signed by J.C. McGaughey as vice president for the corporation. A jury found no liability on behalf of either the corporation or Mr. McGaughey individually. We conclude that the case must be reversed and remanded.

This litigation stems from the financial problems experienced by the Village Creek and White River Levee District and the Mayberry Drainage District, two eastern Arkansas improvement districts. By 1983 the two districts owed approximately $1,300,000.00 to the Merchants and Planters Bank of Newport. For some time both districts had had trouble making payments of either principal or interest, and for several years the notes were annually renewed with the interest due being added to the amount of the new note.

The districts were merged in 1983 with a view towards annexing additional land in order to have a bond issue to pay for repairs to improvement district property. A subsequent annexa-

tion attempt failed.[1] Also by 1983, the Federal Deposit Insurance Corporation had required that the directors of Merchants and Planters Bank agree to demand that the loan be paid by the end of that year or else suffer a charge-off. The improvement district was advised that the loan had to be refinanced. Eventually the improvement district through its attorney, Fred Pickens, contacted First Commercial Bank about a loan. At the time, Mr. Pickens was also a member of the board of directors of Merchants and Planters Bank, as well as a member of the advisory board of the appellant bank. In December 1983, appellant agreed to loan the district $1,725,000.00 on condition that the district obtain sufficient individual guaranties to cover the amount of the note.

The district, through its commissioners, then approached various landowners whose farmland was benefited by the levees. McGaughey Brothers, Inc., owned several thousand acres of land which were so benefited.

In late 1983 two improvement district commissioners, William Pratt and John Conner, approached J.C. McGaughey seeking the guaranty of McGaughey Brothers, Inc., for a portion of the debt. At trial, both commissioners testified that Mr. McGaughey told them he did not have approval from his board of directors to sign for the corporation and that he either did not have authority, or doubted his authority, to sign on behalf of the corporation. Nevertheless J.C. McGaughey, as vice president for the corporation, did sign an agreement guarantying the repayment of $160,000.00 of the indebtedness.

At trial Mr. McGaughey admitted signing the guaranty ostensibly on behalf of the corporation, but contended that the commissioners were acting as agents for the bank in obtaining signatures to the guaranty agreement and thus their knowledge of Mr. McGaughey's statement concerning his lack of authority to bind the corporation should be imputed to First Commercial Bank. The trial court submitted the issue of agency to the jury, and the main issue on appeal is whether it was error to do so. We hold that the court should have ruled, as a matter of law, that the

---

[1] *Williams* v. *Village Creek, White River and Mayberry Levee and Drainage District*, 285 Ark. 194, 685 S.W.2d 797 (1985); *Mayberry Drainage District* v. *Graham*, 289 Ark. 156, 711 S.W.2d 147 (1986).

commissioners were not the agents of First Commercial Bank.

The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents to so act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control. *Evans* v. *White*, 284 Ark. 376, 682 S.W.2d 733 (1985); *Crouch* v. *Twin City Transit, Inc.*, 245 Ark. 778, 434 S.W.2d 816 (1968); Restatement (Second) of Agency § 1 and comment a (1957). Ordinarily agency is a question of fact to be determined by the jury; but where the facts are undisputed, and only one inference can be reasonably drawn from them, it becomes a question of law. *Evans* v. *White*, 284 Ark. at 378; *Campbell* v. *Bastian*, 236 Ark. 205, 365 S.W.2d 249 (1963).

Courts which have considered the specific issue presented here have held that when a bank directs a borrower to obtain the signature of another on a personal guaranty as a condition of making a loan, the act of the borrower in obtaining the signature is one for his own benefit and the borrower is not the agent of the bank. *First National Bank of Denver* v. *Caro Construction Co., Inc.*, 211 Kan. 678, 508 P.2d 516 (1973); *CIT Financial Services, Inc.* v. *Gott*, 5 Kan. App. 2d 225, 615 P.2d 774 (1980); *Skrypek* v. *St. Joseph Valley Bank*, 469 N.E.2d 774 (Ind. App. 3 Dist. 1984).

In *Caro Construction*, Nicholas Caro was the president and sole stockholder of Caro Construction Co., Inc. The corporation had successfully bid on a contract to build a post office building in Golden, Colorado. Mr. Caro applied to First National Bank of Denver for a loan to finance construction. The bank approved the loan on the condition that the note be personally guaranteed by Mr. Caro and his ex-wife, Betty. Nicholas Caro obtained his ex-wife's signature and the loan was made. When the corporation defaulted on the obligation, the bank sued Nicholas and Betty individually. Betty's defense was that Nicholas made misrepresentations of fact to her in order to obtain her signature on the guaranty, and because he was an agent for the bank the misrepresentations would be chargeable to the bank under the doctrine of respondeat superior.

The Kansas Supreme Court, quoting *Swan Savings Bank* v. *Snyder*, 124 Kan. 827, 262 P. 547 (1928), said:

> One who desires to borrow money at a bank, or to renew an indebtedness he has there, and who goes to another to get him to sign the note with him in order that he can get the bank to accept it, acts for himself and does not act for the bank. . . . .

The Court in *Caro* continued:

> The test in determining the existence of agency so the doctrine of respondeat superior is applicable, is the right to control the servant.

> The bank had no control over Nicholas in procuring the signature of Betty, nor did the bank attempt to exercise any control. The bank merely required the signature of Betty and stated to Nicholas that if he wished to obtain the loan he would have to obtain her signature. The burden of proof was on Betty to establish by competent evidence the relationship of principal and agent. What constitutes agency and whether there is any competent evidence reasonably tending to prove its existence is a question of law. We conclude as a matter of law no agency existed between the bank and Nicholas Caro. [Citations omitted.]

In the case at bar Wallace Cunningham, the executive vice president for First Commercial Bank, testified that he handled the loan to the improvement district. He testified that the bank originally required that the commissioners themselves individually guarantee the debt. The commissioners declined to do so, and instead proposed that guaranties be obtained from landowners having property within the boundaries of the improvement district.

The guaranty agreement itself was apparently prepared in Mr. Pickens' office. Cunningham testified that the bank did not give any of the people representing the district any specific instructions about the execution of the loan documents. He said that, as far as he knew, the commissioners were the ones who decided who would sign the guaranty agreement and the amount of each individual's specific guaranty.

William Pratt testified that in meeting with Mr. Mc-Gaughey he was acting as a commissioner of the district. John Conner testified that First Commercial Bank gave him no instructions about any of the loan documents and that the bank did not have the power to control his actions with regard to the loan transaction. He testified that he was not acting on behalf of the bank, but rather in his capacity as a commissioner of the improvement district.

The relevant portion of Mr. McGaughey's testimony follows:

A. They [Pratt and Conner] wanted to sign a signature on a guarantee is what it amounted to.

Q. Who was the guarantee in favor of?

A. A bank in Little Rock.

Q. Was there anybody from the Little Rock bank present at the meeting?

A. No. Not that I—they didn't identify themselves as such.

Q. All right. Who at, who at the meeting had possession of this bank guaranty agreement?

A. John and Bill. [Conner and Pratt]

Q. Do you know how they had come to have or be carrying this guaranty agreement?

A. No, they had it. I, I don't know how they got it.

Q. Did you know who prepared it?

A. No, I didn't.

Q. What did they ask you to do with regard to the guaranty agreement?

A. They told me that the Little Rock bank was requiring signatures from landowners and they were collecting the signatures for them.

Q. For who?

A. For, for the Little Rock bank, they were — they were

— it was a requirement from them that they have them before the loan would go through evidently.

Q. And they were carrying the guaranty agreement?

A. They, they had it on the—on the table, yes.

Q. What did they want you to sign for?

A. They wanted McGaughey Brothers to sign for $160,000.

\* \* \*

Q. At the time it was first presented to you in '83, J.C., who did you believe Bill or John, Bill Pratt or John Conner, to be acting on behalf of?

A. Well, these signatures were required and they were getting them for the bank they said.

Q. And so?

A. I — I believed them to be acting for the bank.

Q. Which bank?

A. Little Rock bank.

\* \* \*

Q. Mr. McGaughey, did Mr. Pratt tell you that he was acting for First Commercial Bank?

A. He didn't tell me who he was acting for.

Q. You heard his testimony in the deposition, did you not, that he was acting for the commissioners?

A. I heard that, yeah.

Q. Do you have any reason to dispute the accuracy of what he said under oath?

A. I believe he was acting for the bank but that wouldn't necessarily mean. . .

\* \* \*

Q. Do you have any reason, Mr. McGaughey, to dispute what Bill Pratt said?

A. He didn't tell me directly that he was representing the bank.

\* \* \*

Q. You made an assumption, didn't you, Mr. McGaughey?

A. It would, it would have been an assumption, I suppose. It's all I had to work with.

\* \* \*

Q. They didn't tell you anything about who they represented.

A. That's right.

Q. So we can be fair with the jury, in your head you thought they were representing the landowners, which included you?

A. Yes.

■ When Mr. McGaughey's testimony is viewed in its entirety it is clear that he merely assumed that Pratt and Conner were acting as agents for First Commercial Bank from the fact that the bank had required that the note be guaranteed. We hold that the evidence was insufficient to create a question of fact on the issue of agency, and that that issue should have been determined by the court in appellant's favor, as a matter of law.

■ Of the other issues raised, we reach only those which are likely to recur upon retrial. Appellant contends that the court erred in refusing to give its requested instruction No. 7. This instruction, based on language appearing in *First American National Bank* v. *Coffey-Clifton, Inc.*, 276 Ark. 250, 633 S.W.2d 704 (1982), would have told the jury, in essence, that a guarantor has liability under a guaranty agreement if the principal debtor defaults. No doubt this is a correct general statement of law, but

the matter was adequately covered by other instructions. A trial court is not required to give a repetitious instruction. *Porter* v. *Lincoln*, 282 Ark. 258, 668 S.W.2d 11 (1984).

Appellant also contends that the court erred in refusing to give its requested instruction No. 18:

> You are instructed that one dealing with an admitted agent has the right to presume, in the absence of notice to the contrary, that he is a general agent, clothed with authority equal to the apparent scope of authority.

■ Although this is again a correct statement of law, we agree with the trial court that it is inapplicable to the particular facts of the case.

Finally, appellant argues that the court erred in giving the appellees' requested instruction No. 11:

> Any unauthorized signature is wholly inoperative as that of a person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value.
>
> Unauthorized signature indicates a signature made by an agent exceeding his actual or apparent authority. The unauthorized signature is effective to impose liability on the actual signor; *however, liability is limited to parties who pay the instrument in good faith, and one who knows the signature is unauthorized cannot recover from the signer on the instrument.* [Emphasis added.]

■ In the case at bar there was no evidence that the appellant had actual notice of Mr. McGaughey's disclaimer of authority. The only way such knowledge could have been imputed to the bank would be under the theory that the improvement district commissioners were agents for the bank. Because we have held that the commissioners were not the agents of the bank, the italicized portion of the instruction should not have been given.

We reverse and remand this case to the trial court for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

CORBIN, C.J., concurs.

MAYFIELD, J., would affirm.

COOPER, J., not participating.

DONALD L. CORBIN, Chief Judge, concurring. I concur with the result reached by the majority. However, I would not rely on *First National Bank of Denver* v. *Caro Construction Co.*, 211 Kan. 678, 508 P.2d 516 (1973), *Swan Savings Bank* v. *Snyder*, 124 Kan. 827, 830, 262 P. 547, 549 (1928), and other sister state case law for the basic premise of law that:

> One who desires to borrow money at a bank, or to renew an indebtedness he has there, and who goes to another to get him to sign the note with him in order that he can get the bank to accept it, acts for himself and does not act for the bank.

Instead, I would reverse and remand because of the court's refusal to instruct the jury that "the knowledge of an 'interested agent' is not imputed to his principal." Although I do not like the following authority, I am obliged to follow it as the long-standing precedent of Arkansas case law. *See Bank of Hoxie* v. *Meriwether*, 166 Ark. 39, 265 S.W. 642 (1924); *Little Red River Levee Dist. No. 2* v. *Garrett*, 154 Ark. 76, 242 S.W. 555 (1922); *Greer* v. *Levee Dist. No. 3*, 140 Ark. 60, 215 S.W. 171 (1919). *See also Central Mfg. Co.* v. *St. Louis-San Francisco Ry.*, 394 F.2d 704 (8th Cir. 1968).

The appellant bank, as a condition of refinancing the existing indebtedness of the Village Creek and White River Levee District and Mayberry Drainage District to the Merchants and Planters Bank of Newport, Arkansas, required that the districts deliver to it guarantees from individual landowners who were benefited by the improvements and had sufficient net worth to repay the debt. The commissioners of the district, according to their testimony, were acting within their capacities as commissioners of the district in obtaining guaranty signatures. I have to agree with appellant's argument that even if the commissioners were acting as the agents of the bank, they were so interested in the transaction on an individual basis and as commissioners of the district that any knowledge gained by them during McGaughey's signing of the guaranty agreement cannot be imputed to First

Commercial Bank. I do not believe we would have to engage in speculation to reach the conclusion that if McGaughey's disclaimer had been made known to appellant, it would not have funded the loan. As appellant points out, this would have been a result which would not have been in the best interests of the commissioners, either in their official capacities as commissioners or as individual landowners in the district. Generally, when an agent has no personal interest in the transaction, the law presumes that he will forward all relevant information obtained by him in his position as agent to the principal. However, the basis for the rule ceases to exist when, as here, the agent has a personal interest in the transaction which may conflict with the principal's interests.