CITY ELECTRIC STREET RAILWAY COMPANY *v.* FIRST

NATIONAL BANK.

Opinion delivered July 9, 1898.

1. CORPORATION—WHEN NOT BOUND BY OFFICER'S ACT.—The president of a bank corporation cannot bind it by the negotiation in its name of notes in which he is payee, as his interest conflicts with that of the bank. (Page 546.)

2. NATIONAL BANK—POWERS.—As a national bank cannot engage in the business of a broker, its officers have no authority to negotiate in its name notes which do not belong to it. (Page 546.)

3. ACCOMMODATION NOTE—DEFENSE.—In a suit against the accommodation maker of a note by a bank which has discounted it, it is no defense that the bank knew that the maker signed for accommodation merely. (Page 547.)

4. COLLATERAL SECURITY—RIGHT OF ASSIGNOR TO SUE.—One who has assigned a promissory note as collateral security has such an interest as entitles him to sue the maker, especially where the assignee has surrendered the note to him in order that such suit may be brought. (Page 548.)

5. COSTS—RULE IN EQUITY.—Ordinarily, costs in equity, as at law, are to be adjudged against the losing party, but where there are equitable circumstances demanding a departure from this rule, the chancellor

will tax the winning party with a portion, or even the whole, of the costs. Thus, where mutual accounts between plaintiff and defendant were confused and complicated, a condition for which neither was more responsible than the other, the fee of the master for adjusting such accounts will be divided between the two parties. (Page 549.)

Appeal from Pulaski Chancery Court.

P. C. DOOLEY, Special Chancellor.

*Rose, Hemingway & Rose,* for appellant.

It was error to allow plaintiff to take judgment on notes loaned it for the purpose, because: (*a*) Suits must be brought in the name of the real party in interest (Sand. & H. Dig., § 5623); (*b*) no one but the *holder* and *owner* of the paper could bring suit on it (3 Rand. Com. Pap. § 1656; Byles on Bills, 2; 52 Ark. 418); (*c*) the one who brings the action must be the holder *at the time of bringing the suit* (Byles on Bills, 403; 36 Ark. 456; 21 *id.* 186; 1 Am. & Eng. Enc. Law, 180). Upon insolvency, all rights of set-off are at an end. 3 Thomp. Corp. § 3786. A debt being once proved, the burden of showing payment is on the party pleading it. ·7 Ark. 35; Barbour, Payment, 293. Funds deposited in a bank and belonging to two or more persons, not partners, must be checked out by all the depositors, or the bank must show that the funds were applied to the purpose for which they were deposited. Morse, Banks, 290, 299. An indorser's action against his principal is only for the amount he pays. 3 Rand. Com. Pap. § 1431. An account stated affords *prima facie* evidence of correctness, but it is not conclusive. 18 N. Y. 292; 50 Ark. 218; 62 Am. Dec. 91. A defendant can reserve the subject matter of his counter-claim for a separate action if he sees fit. Pom. Rights, Rem. & Pract. § 804.

*Cockrill & Cockrill,* for appellee.

Where notes are pledged as collateral at the time suit is brought on them, the title to them never having been parted with, the pledgeor may bring suit on them. 32 Ark. 56; 2 Dan. Neg. Trust, § 1201; 2 Pars. Bills and Notes, 436, note 1; 59 Ark. 251. The railway company has no claim against the bank for the proceeds of the notes negotiated by the bank because (1) the notes created no liability upon the railway com-

pany; (2) the railway company is estopped by its acquiescence in the disposition of the funds (117 U. S. 96, 114–115; 46 Ark. 129); (3) the bank had no knowledge that Allis and Brown were misappropriating the funds. Where an agent acts outside the scope of his duties, or for his own interest, his knowledge and actions do not bind his principal. 37 Atl. 550; 35 Atl. 1003; 63 Ark. 418, 425; 46 Ark. 537, 539–540; 152 U. S. 346, 352–353. A national bank has no power to engage in brokerage business. 63 Ark. 418, 425. The facts of the case exclude the theory of novation. 63 Ark. 367, 373.

*Jno. McClure,* for appellee.

A national bank has no authority to act as a broker in the negotiation of notes, and is not bound by the acts of its officers in such transactions. 63 Ark. 425; 42 Md. 581; 89 Pa. St. 324; 37 Atl. 550; 35 Atl. 1053. Receivers are estopped by the same acts as their principals would be. 9 Biss. 253.

McCAIN, Special Judge. This is an appeal from the Pulaski chancery court. Two suits were consolidated in the court below. One of these was a suit brought by Nick Kupferle, as trustee, on an account which H. G. Allis had or claimed to have against the Electric Street Railway Co., and which he had assigned to Kupferle as collateral security for his indebtedness to the First National Bank of Little Rock. The amount claimed in this suit was $157,500. The other suit was an action brought by the receiver of said bank against the same defendant for an amount claimed to be due on several overdrafts and promissory notes aggregating a little over $110,000. The street car company, by answer filed in each case, disputed the correctness of the claims sued on, denied any liability on either claim, averred that the receiver was not the holder or owner of certain of the notes embraced in his suit, and by way of counter-claim asked for judgment over against the receiver for the proceeds of certain notes alleged to have been negotiated by the bank for the street car company.

. The chancellor appointed a master to state an account between the parties, and, on the coming in of the master's report,

the receiver was awarded a decree against the street car company for $106,850.26.    Both parties appealed.

1.    We conclude that the street car company has no right to complain of the chancellor for refusing to give judgment over against the receiver on the counter-claim.    The contention of counsel on this point is plausible, but underlying it there is the fallacy that, in negotiating the notes in question, the action of Allis was the action of the bank.    Allis was president of the bank, it is true, but he was also payee of the notes, and he was personally interested in their negotiation.    This of itself made him a stranger to the bank, so far as the handling of these notes was concerned.    An agent can not prostitute the name of his principal to the service of his own personal ends, and this rule applies with full force to the official of a corporation in making use of the corporate name.    *Am. Surety Co.* v. *Pauly*, 170 U. S. 133; 1 Morawetz, Corporations, § 517.

Not only so, but it was held by this court in *Grow* v. *Cockrill*, 63 Ark. 418, that a national bank can not engage in the brokerage business.    It follows that officers of the bank had no authority to negotiate notes which did not belong to the bank.    But it is said that the bank got the proceeds of the notes when they were discounted, and that for this reason the bank ought to account for the amount received.    It is true that Allis deposited the proceeds of the notes in the bank, or, which is the same thing, he had the amount passed to the credit of the bank by its metropolitan correspondents, to whom he remitted the proceeds.    To deposit money in bank is the same in legal effect as to place an amount with its approval to its credit in another bank.    But the bank did not in this case get the proceeds of these notes, because Allis deposited the same to his own credit.    It is no answer to this to say that he ought not to have done this, or that the bank ought not to have allowed him to do this.    When you go to deposit money in bank, it must be a very extraordinary case in which the bank can challenge your right to say whether the deposit offered shall go to your credit or to that of some one else.    As Allis in this case had unlawfully used the name of the bank in procuring the money on the notes, the bank official making the entry might well have refused to credit Allis with the deposit, and might have placed it

to the credit of  bills  payable or re-discounts; but we are not satisfied that there was anything in the circumstances of the case to require the bank to credit the amount to the street car company over the objection of Allis or without his direction.

It is said that the bank knew that this paper in Allis' hands was accommodation paper.  We are not certain that the bank did know this, but, if it did, that was the most satisfactory evidence that the street car company intended him to have the money.  If you intrust a friend with your negotiable note, either for his accommodation or your own, you would hardly be allowed to complain that some one had discounted the paper for your friend, and allowed him to have the proceeds.

But, even conceding this, counsel say it. was wrong for the bank to allow Allis to check out the money without Brown also signing the checks, as the latter was a joint payee with Allis in some of the notes.  This is a matter of which it would seem that Brown alone could complain, but we may be sure that Allis did not get any money on a note payable to Allis and G. R. Brown without Brown's signature to the note, and an inspection of the notes filed show that they bear Brown's indorsement.  This indorsement puts an end to any further demand for Brown's signature.

We need not discuss what are the duties, if any, of a bank when it finds a trustee depositing trust funds and checking them out in his own name.  We do not think the street car company have made a case calling for the determination of that question.  It is a circumstance not to be overlooked in this connection that all these transactions took place long before either one of the corporations ceased to do business, and renewal notes were given by the street car company after they knew, or had an opportunity to know, what had been done with the proceeds of the original notes.  What we have said disposes of the contention that the street car company is entitled to judgment against the receiver on the counter-claim.  If we are wrong in our conclusion on this point, however, it would not follow that the street car company should have the affirmative relief claimed, since the chancellor allowed the street car company credit for this amount  on  the account sued on by Nick Kupferle as trustee, and if the claim of

Nick Kupferle were found to be just, then a credit on this is all that the street car company could ask.

2.   Counsel insist that the receiver of the bank should not be allowed to recover in this action on certain notes embraced in the decree, because these notes at the commencement of the suit were, as the receiver admits, in the hands of a St. Louis bank which claimed to hold them as collateral security for a debt due the latter bank.   It seems that, after the suit was commenced, the St. Louis bank and the receiver reached an agreement, by which the notes were returned to the receiver, and the latter filed them in court for cancellation when the decree herein was taken.   This defense, it must be agreed, is extremely technical, so much so that counsel seem to concede that, if all the parties were solvent, this plea would hardly merit attention, but the apology offered for the interposition of this defense is that the insolvency of the corporation destroyed the right to make a transfer of claims to be used as a set-off. Since we have determined, however, that the street car company is entitled to no affirmative relief against the receiver, it has nothing to lose on this score.

This court held in *Key* v. *Fielding*, 32 Ark. 56, that where commercial paper is assigned as collateral, the assignee takes it as trustee of an express trust.   Such a trustee, under our statute, may sue in his own name, but the assignor still has an interest in the paper assigned, and he is not an improper party plaintiff in a suit on the paper.   If in this case the St. Louis bank had refused to surrender the notes to the receiver for cancellation, the receiver might have made the St. Louis bank a party, so as to adjust the rights of all parties, but the course pursued by the chancellor under the circumstances was proper, and accomplished the ends of justice.

3.   As to whether the plaintiff receiver was entitled to recover on the account assigned to Kupferle is a question which seems to be full of difficulty.   From what the receiver and his counsel say in their brief, we infer that the property of the street car company has all been consumed by mortgages foreclosed since the commencement of this suit.   They accordingly express themselves as being indifferent as to the amount of the judgment obtained against the street car company.   The court

is pressed for time with important litigation, and, taking coun-
sel at their word, we decline to go into the questions raised by
the appeal on this branch of the case, as it seems to be a mat-
ter of no practical interest or importance. We therefore grant
the street car company the relief asked on this point, and
modify the decree to the extent of the judgment entered on the
Kupferle account.

If we are correct in the conclusions we have reached, as
to the street car company's set-off or counter-claim, there seems
to be no other defense to the notes sued on except the counter-
claim of $6,124, which was allowed by the master and approved
by the decree of the lower court. We therefore deduct the
sum $39,780.01, allowed on the Kupferle account, from the
judgment of $106,850.26, rendered by the chancellor, leaving
a balance of $67,070.25, for which amount the decree and
judgment of the court below is affirmed.

The chancellor allowed the master a fee of $800, and ad-
judged the same as cost against the street car company. No
complaint is made of the amount of the allowance, but the
street car company insist that the chancellor erred in taxing it
as an item of cost against the street car company. Ordinarily,
costs in equity, as at law, are to be adjudged against the losing
party, but where there are equitable circumstances demanding
a departure from this rule, the chancellor will tax the winning
party with a portion, or even the whole, of the costs. *Trimble*
v. *James*, 40 Ark. 393.

The large amount allowed to the master in this case with-
out objection indicates that he must have expended quite an
amount of time and labor in examining and adjusting the ac-
counts between the two corporations. It can hardly be said
that either of the two corporations were to blame for the con-
fusion and complications in their account, since both of them
were the victims of Allis' domination and fraudulent conduct
of their affairs. The master seems to have been appointed by
consent. His investigation extended to the books and papers
of both corporations, and in the books and papers of both were
found inaccuracies, not to say frauds and falsehoods. In view
of these circumstances, and the large amount of the allowance,

we think it would be equitable to require each party to pay half the master's fee, and it is so adjudged.

BATTLE, J., disqualified.