BORDEN *v.* ARMSTRONG

5-3829                          403 S. W. 2nd 731

Opinion delivered June 6, 1966

*John L. Anderson* and *Roscopf* and *Raff,* for appellant.

*E. J. Butler* and *Townsend* & *Townsend,* for appellee.

OSRO COBB, Justice. The New Castle-Barrow Hill Road Improvement District was formed in 1961 under the lengthy provisions of Chapter 12 of Title 20 of Ar-

kansas Statutes Annotated. On September 25, 1961, the county court of St. Francis County entered an order officially creating said district. The purpose of said district was to improve and pave some twenty-five miles of county dirt road, which was frequently impassable in adverse weather, at a cost then estimated at approximately $850,000. It was contemplated that said improvements would be made with one half of the cost being matched by funds from the federal government.

In March of 1964 the commissioners of the district, noting that the costs of materials, labor and equipment had substantially increased, advised all of the parties at interest by letter that said increase in cost would be anywhere from 20 to 30 per cent above that originally estimated. The landowners involved were requested to indicate their approval or disapproval of continuing the project in view of the added cost, and the landowners were further advised that if a majority disapproved the increased costs the project would be abandoned. The added costs involved no changes in plans or specifications for the improvements originally contemplated.

The commissioners appointed Jason L. Light as assessor for the district. On March 23, 1964, Mr. Light filed with the county clerk his detailed assessment of benefits against the parties at interest in the total sum of $1,280,530.33. The assessor made no report as to assessment of damages to the landowners. He testified that the project was devoted to the improvement of an existing county road without substantial changes in its location, and that the project involved benefits and no damages to the landowners except those incident to taking lands. Issues as to damages are discussed under that heading in this opinion.

On May 19, 1964, some ninety landowners joined together in instituting a suit in chancery as a class action against the commissioners of the district, alleging that the assessments of benefits as made by the assessor were grossly contrary to the representations made to

the landowners at the time of the formation of the district; that said assessments of benefits were excessive to such an extent as to be confiscatory in nature; and that said assessments of benefits were inequitable as between the various landowners. Appellants' complaint prayed the following general relief:

(a) That the commissioners and the assessor for the district be enjoined and restrained from proceeding with the levy and collection of said inequitable and excessive assessments.

(b) That the commissioners be ordered and directed to file with the clerk of the county court the plans and specifications, together with engineering surveys and cost estimates, on any further construction plans.

(c) That the commissioners be ordered and directed to divulge to the landowners the results of the so-called election which was held pursuant to the terms of the letter of the commissioners to the landowners on March 10, 1964.

(d) That the commissioners and the assessor be ordered and directed to make any further assessments in accordance with assessed benefits which are fair, reasonable and equitable to the landowners.

Appellees' answer denied any modifications in the plans and specifications of the original project but did admit the increase in cost therefor over the original estimate; and also denied any excessive or inequitable or unfair assessments of benefits as to any landowner in the district, and prayed for dismissal of the complaint.

The chancellor invoked the assistance of a special master, Fred MacDonald of Brinkley, to conduct hearings as to the issues joined in the pleadings and to report to the court. Extensive hearings were held and much testimony taken. The transcript of proceedings has required five separate volumes. The findings and con-

clusions of the special master in chancery covered some fifty-six pages. The master resolved all of the issues joined between the parties in favor of appellees. Formal exceptions to the report of the master were timely filed by appellants. The chancellor, after reviewing the report of the master, after hearing thereon with respect to the exceptions taken thereto, and after hearing arguments of counsel and receiving written briefs on behalf of the parties, on the 8th day of July, 1965, entered a decree approving and confirming the report of the master and finding that all of the exceptions of appellants to the report of the master should be denied and overruled, and upon said findings dismissed appellants' complaint. From this adverse decree appellants are now here on appeal.

Appellants urge thirteen separate points, all of same being related to and connected with their ten stated exceptions to the report of the master.

We note that appellants' points 1, 5, 6, 7, 8, 9, 10, 11, 12 and 13 all relate to the work of the district assessor; his method in making the assessment of benefits; alleged inequity and invalidity of such assessment; his failure to assess damages in certain cases; and that his assessments were arbitrary and confiscatory. We combine all contentions of appellants as to assessments into a single discussion.

## The Assessment of Benefits

The record before us reflects that in 1957 and 1958 the A. P. Capers Company, a company specializing in assessment work, appraised all the property located in St. Francis County for county and city tax purposes. Procedures set forth under Act 153 of the Acts of 1955, State of Arkansas, were followed. Bare farm lands in the territory were broken down into six different types of cultivatable land, and each type was in turn broken down into four categories, depending on accessibility as to roads, soil type, crop production, etc. All of the land on Crowley's Ridge, including the land in the instant

road improvement district, was designated as an "F" type, or the lowest value land. In this classification, cultivatable land located on a hard-surface road was valued at $70 an acre; on a gravel road $60 an acre; on a dirt road $50 an acre; and on no road $40 an acre. Woods land and waste land on a hard-surface road was valued at $25 an acre; $20 on a gravel road; $15 on a dirt road; and $10 without a road. Following these appraisals, county taxes were assessed based upon 20 per cent of said appraised values.

There was considerable new construction in the improvement district subsequent to the Capers report. As to such new improvements, Mr. Light, who had worked with the Capers Company in St. Francis County in compiling its appraisal report, made trips about the district personally inspecting such new improvements, and thereafter employed the recognized factors for appraisals of same as used by the Capers Company and as set forth in the Assessor's Manual (1956) introduced into evidence as an exhibit to the testimony of witness Cleo C. Perry. Said manual is an implementation of the provisions of Act 153 of 1955.

When all appraisals of properties in the district had been completed, Mr. Light then applied the same yardstick as to each parcel of property in assessing benefits and in extending the annual district tax that would be due. The district included approximately 500 separate appraisals of property. The assessed benefits for each parcel of property were computed at 3.88 times the assessed value (approximately 20 per cent of the appraised or market value). Annual district taxes were computed and extended at 3.34 per cent of said assessed benefits.

A few examples from the report of the district assessor indicate his complete fairness and impartiality in the discharge of his duties. Parcel No. 5407 is owned by Turley Davis, one of the appellants. This parcel contains 31.55 acres of land, fronting for one half mile

along the road proposed to be improved. This acreage had been assessed by the county, based upon the Capers report, at $245 for land and $255 for improvements—a total of $500. Mr. Light multiplied the $500 by 3.88 to arrive at the total benefits to be assessed for the district, which amounted to $1,940. Annual taxes for the district were then extended at a percentage of 3.34 per year, resulting in an annual tax of $64.67. This owner received maximum benefits and his district taxes were in equitable proportion thereto.

Parcel No. 4943, owned by appellant E. W. Borden, contains 40 acres not directly on the road and was assessed by the county at $85. The district assessor assessed benefits of $329.80 and an annual tax of $11.

Parcel No. 2737 involves 40 acres in a more cultivatable condition than Parcel 4943 and carried a county assessment of $140. District benefits were assessed at $543.20 and an annual tax extended for the district of $18.10.

Four Meadowcliff subdivisions located some five miles from Forrest City and included in the road district were also assessed by individual subdivided lots. Each vacant lot had been assessed by the county at $100, and using the same formula, the district assessor assessed benefits at $388 and extended annual taxes due per vacant lot at $12.94. Where residences had been completed on these lots, assessments were proportionately increased. Some of these assessments by Mr. Light indicated that he had computed the value of said residences at $10,000 or more. The record does not show the exact size of the lots platted for residential purposes. It is clear that in relation to the land area involved the lots were assessed at from 20 to 25 times as much as other miscellaneous lands in the district.

Lee B. Horton, owner of Tracts Nos. 5318-19-20, 5324, 5324-1 and 5331, testified that the assessed benefits against his properties were reasonable in all respects

and a great many other owners of property in the district testified likewise.

In *Board of Improvement of Waterworks Improvement Dist. No. 22* v. *Southwestern Gas & Electric Co.,* 121 Ark. 105, 180 S. W. 764 (1915), we said:

"It is claimed by appellees that the assessors did not attempt to make an assessment according to benefits, but merely adopted an arbitrary method which disregarded the elements which go to make up benefits, and had no relation to the real benefit to the property from the proposed improvement. The two assessors testified that they were familiar with the real property in the district, and that in the meetings and in the conference between the members of the board they gave consideration to the method of assessment and reached the conclusion that all the property in the district would be relatively benefited in proportion to the value thereof, and they assumed that the assessment made by the county assessor was correct and that a percentage assessment based on the valuation would represent the true benefits to be derived from the improvement. It is not shown that the assessment of values made by the county assessor was incorrect. In fact, it must be assumed that the assessment made by that officer was approximately correct—as near correct as can be. When valuations are assessed by the county assessor and equalized by the board of equalization, it is reasonable to assume that the assessment is as near a correct one as human agency can devise. So it can not be said that there was anything arbitrary in the action of the board of assessors in accepting as correct the county assessment as a basis of valuation."

Furthermore, Ark. Stat. Ann. § 20-1206 (Repl. 1956) authorizes the commissioners of such an improvement district to require the assessor to re-assess the benefits in said district not oftener than once a year,

etc. Should the improvements contemplated by the district result in the construction of additional homes in the Meadowcliff subdivisions, such additional values can be seasonably assessed for the benefit of all parties in the improvement district.

Appellants suggest that some of the commissioners owned some of the lots in the Meadowcliff subdivisions and that as such owners they were receiving preferential treatment and special benefits. The record does not support this. On the contrary, assessments of benefits for the subdivision are in line with assessments of the district generally. We note that the vacant lots in the subdivisions are of necessity appraised at a minimum of $500 each in order to result in assessed value of $100.

Appellants contend that the assessments of the district assessor were invalid because he performed most of his official duties before taking and filing his oath of office. This contention is without merit. In *Gregg* v. *Road Improvement Dist. No. 2 of Jackson Cty.,* 169 Ark. 671, 277 S. W. 515 (1925), we said:

"We are of the opinion that a failure to take the prescribed oath before the proper officer affords no grounds for nullifying the assessment. . . . The legal qualifications of the assessor can not be called in question collaterally so as to invalidate the assessment."

Appellants further complain that assessment of benefits against the American Telephone & Telegraph Company were arbitrarily reduced by the commissioners. The answer to this contention is that the properties of A.T. & T. had been assessed by the Public Service Commission on a basis of 33 1/3 per cent of true value, whereas county assessments made following the report of the Capers Company were computed on a basis of 20 per cent of the true value, and it was therefore necessary for the improvement district to reduce its as-

sessment as to A.T. & T. so as to bring it in line with assessments of benefits of other property owners in the district, and reduction in assessment to accomplish this purpose was entirely proper.

Appellants contend that assessments as made are confiscatory. It should be noted that the costs of the improvements contemplated by the district are not attacked as being excessive for the improvements to be made; that the United States Government is to defray one half of the cost of these improvements; and that in another section of this opinion reference is made to other possibilities of aid to the district in meeting its obligations for said improvements.

Our statutes require that assessments be made in relation to benefits derived, and make no mention of the ability of the beneficiaries to pay. See Arkansas Statutes Annotated, Title 20, Chapt. 12 (Repl. 1956). The trial court found that the landowners would receive all the benefits and enhancement of the values of their properties as reflected by the report of the district assessor. We therefore find no merit in this contention of appellants.

From a practical standpoint, we doubt that the improvement district assessor could have devised and pursued a sounder and better method in arriving at fair and equitable assessments of values and benefits for the district. While appellants represent a minority of the property owners in the district and contend that their annual taxes for the district are too high and oppressive, even they do not suggest that the district itself be dissolved and terminated. After a review in depth of this record concerning the assessments made by the district assessor, we find no error in relation to the work of the assessor for the district and we therefore find no merit in any of the contentions of appellants in regard to same.

### Damages of Landowners

The record in this case reflects no proof of damages

by appellants except in cases where revisions in the location of the county road have resulted or will result in the taking of some additional lands. This road improvement district has the power of eminent domain under the provisions of Ark. Stat. Ann. § 20-1223 (Repl. 1956). When the plans and specifications for the improvement were filed with the county clerk, some five separate orders of the county court were made and entered, condemning the necessary additional lands for said improvement. It appears from the record that there was no proof of publication of notice prior to said condemnation orders as required by Ark. Stat. Ann. § 76-917 (Repl. 1957).

The special master in chancery made the following statement in his report to the court:

"According to the testimony of W. V. Armstrong, the 10% contingency cost, as set up in the Bond Issue, was for the purpose of acquiring right of ways from the various property owners and the payment of any other expenses to the District, and this said 10% of the construction cost had been set aside for these contingencies."

It is therefore clear that the proceedings in the chancery court in this case and the decree entered dismissing appellants' complaint in no way prejudice the rights of the landowners to timely assertion of their claims for compensation and damages by reason of the taking of any portions of their lands and improvements thereon. It also affirmatively appears that such claims are to be paid by the improvement district from its contingency funds. In any event, such landowners have their statutory remedies in the courts if acceptable settlements are not concluded between them and the improvement district. See Ark. Stat. Ann. § 20-1223, *supra,* and Ark. Stat. Ann. §§ 35-201 thru 35-208 (Repl. 1962).

*The Good Faith of the Commissioners for the District*

All remaining points urged by appellants relate to

the good faith of the commissioners and we discuss same jointly.

When it appeared that the costs of the improvements under the original plans and specifications would substantially exceed the original estimates, the commissioners forwarded to all parties at interest within the district their letter of March 10, 1964, which is quoted in full because of its significance in this particular discussion:

"Forrest City, Arkansas
"March 10, 1964

"Mr. E. W. Borden
"Colt, Arkansas

"Dear Mr. Borden:

"Re: New Castle-Barrow Hill Road Improvement District assessment and Taxes

"Since we began the organization of the above-styled improvement district to raise one-half of the money necessary to match Federal funds for the other half to improve and pave 25 miles of road in the above mentioned district, the costs of materials, labor and equipment have increased to the point where the tax against the properties of the landowners in the district will be anywhere from twenty to thirty percent more than was represented when the Commissioners and Representatives of the district circulated the petition for organization thereof. For example, if your road tax was $100 when the petitions were circulated, it will be approximately $130 now.

"Mr. Jason L. Light, Assessor of the District, has now completed the assessment of betterments of all lands located within the district, which list also shows what each landowner's tax will be per year. The assessment of betterments is on file in the St.

Francis County Clerk's Office, and you can make inquiry there if you desire. If it isn't convenient for you to do this, then you may see one of the Commissioners and get him to explain your tax to you.

"We enclose herewith for your convenience a ballot to be signed by you, either approving or disapproving the increase which has come about as a result of the general increase in cost of labor, equipment and materials during the past two or three years. Please return the ballot by April 10, 1964. If we do not hear from you one way or the other about this, we will assume that the assessment of betterments and tax rolls prepared by Mr. Light are satisfactory with you.

"If we get the approval of the majority of the landowners in the district, either by affirmative assent or consent, or by silent acquiescence, or both, the Commissioners of the district intend to go ahead, sell the bonds, match the funds of the Federal Government, and let the contract or contracts for the road improvement initially contemplated.

"We expect to make the final decision within the next thirty days. You are welcome to come in and look at the proposed assessment rolls and tax extensions. We feel that most of you realize that the proposed improvement will increase the value of your property three times or more. We also feel that you are aware of recent newspaper articles in which it appears that the Governor of the State of Arkansas is considering the possibility of eventually taking over projects of this nature and that there is a possibility that this tax load might be assumed by the State of Arkansas sometime in the near future. We also hope that you realize that as new homes are built in the road improvement district, the assessed valuation of the district will increase and the road tax will decrease. We expect this to happen rather rapidly.

"Very truly yours,
/s/ John C. Lindsey Jr.
/s/ W. V. Armstrong
/s/ Earl E. Horton
/s/ Edward R. Harris
/s/ J. W. Alderson Jr.
"Commissioners of New Castle-Barrow Hill Road Improvement District
"Filed May 19, 1964
"Mamie N. Wood, Clerk"

One hundred thirty-five landowners formally replied, indicating their approval of going ahead with the project, whereas 77 opposed. The 77 opposed represent about 25 per cent of the total number of owners.

It is obvious from the letter of the commissioners that they are seeking to get maximum federal help and possibly state help as well in the project, and it appears that the landowners will therefore receive benefits much in excess of the cost as pro-rated to them.

Appellants argue that no engineering report was ever filed by the commission with the county clerk and that no report was ever filed or information given to the landowners as to the nature and type of bonds to be sold by the district. Appellees concede that these have not been done. However, no statutory requirement exists for such actions by the commission, nor have appellants cited a single case authority in support of these contentions. See Ark. Stat. Ann. § 20-1204 (Repl. 1956).

In summary, we find nothing in this record indicating bad faith on the part of the commissioners in the performance of their duties for and on behalf of the improvement district.

The trial court rejected all of the exceptions filed by appellants to the report of the special master in chancery, and we have concluded that the action of the

trial court in dismissing appellants' complaint is supported by a preponderance of the evidence and should not be disturbed. *Orrell* v. *E. C. Barton & Co.,* 240 Ark. 211, 398 S. W. 2d 685 (1966).

### The Cross-Appeal of Appellees

The chancellor assessed all of the costs in this litigation, including the fees of the special master in chancery, against appellees. Of this action appellants do not complain, but appellees appeal. We have concluded under the facts of this particular case that the chancellor did not abuse his discretion in his assessment of the costs against appellees. *Thomas* v. *Smith,* 215 Ark. 527, 221 S. W. 2d 408 (1949); *City Electric St. Ry. Co.* v. *1st Nat'l Bank,* 65 Ark. 543, 47 S. W. 855 (1898); *Trimble* v. *James,* 40 Ark. 393 (1883).

Having found no prejudicial error in the trial of this case, the decree of the trial court is affirmed on appeal and affirmed on cross-appeal.